**Marquis Okley KINDER, Respondent,**

v.

**Donna Marie KINDER, Appellant.**

**No. WD 51431.**

Missouri Court of Appeals,
Western District.

April 2, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 1996.

Carla Grace Holste, Jefferson City, for appellant.

Kenneth L. Oswald, Eldon, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

FENNER, Chief Judge.

Donna Marie Kinder (Wife) appeals the decree of the trial court dissolving her marriage to Marquis Okley Kinder (Husband). The decree provided for joint legal custody of the parties' two minor children. Husband received primary physical custody subject to visitation by Wife and was awarded the marital home. The decree of the trial court is affirmed.

On July 11, 1994, Husband filed his petition for dissolution of marriage requesting custody of the children. Wife filed her answer and a counter-petition for dissolution of marriage on July 22, 1994. In both her answer and counter-petition, Wife sought custody of the children. She did not allege abuse or violence by husband towards her or the children.

The case was heard by the trial court on December 16, 1994. Evidence regarding the custody of the minor children, the amount of child support, the value of marital property, and the existence of marital debt was produced by both parties. The trial court entered its order on July 20, 1995, awarding the parties joint legal custody of the children. The children were placed in the primary physical custody of Husband, and he was awarded the marital home. The court also ordered Wife to pay child support in the amount of $292 per month per child. This appeal followed.

As her first and second points on appeal, Wife claims that the trial court erred in failing to enter written findings pursuant to sections 452.375.2(5) and 452.375.11, RSMo 1994, as to the occurrence of domestic violence. Furthermore, she alleges that the trial court erred in finding that it was in the best interest of the children to be placed in the primary custody of Husband. She argues that evidence of Husband's alcoholism, mental history, and violence during the marriage did not support the court's finding.

■ The decree of the trial court will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The appellate court will defer to the trial court's determination of credibility and view the evidence and permissible inferences in the light most favorable to the decree. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991).

Sections 452.375.2(5) and 452.375.11, RSMo 1994 require the trial court to enter written findings of fact regarding the best interests of the children if domestic violence has occurred. Specifically, section 452.375.2(5) provides:

> (5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

§ 452.375.2(5), RSMo 1994. Additionally, section 452.375.11 provides:

> If the court finds that domestic violence has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm.

§ 452.375.11, RSMo 1994.

Wife cites *Gant v. Gant*, 892 S.W.2d 342 (Mo.App.1995), in support of her proposition that the trial court erred in failing to make written findings of fact. In *Gant*, wife appealed the child custody provisions in the decree dissolving her marriage to husband wherein husband received primary physical custody of the parties' two minor children. *Id.* at 342. She argued that the trial court erred in failing to enter written findings as to the children's best interests or as to the occurrence of domestic violence pursuant to sections 452.375.2(5) and 452.375.11, RSMo Supp.1993. *Id.* at 342–343. At trial, wife offered evidence that husband had physically and mentally abused her and that he was mentally unstable. *Id.* at 343. Husband acknowledged the incidents described by wife, but he maintained that he had matured since the incidents. *Id.* at 343–344.

On appeal, this court found that the trial court was required under the facts of the case to indicate on the record whether it believed that domestic violence [1] had occurred and, if so, to make specific findings as to why custody was given to the allegedly violent parent. *Id.* at 347. This court explained that where there was substantial evidence in the record of domestic violence, it could not be assumed by the trial court's silence that the trial court did not believe that domestic violence had occurred. *Id.* at 346.

■ The facts of the present case, however, did not require the trial court to state directly whether it believed that domestic violence had occurred. Although not alleged in her answer or counter-petition, wife argues on appeal that domestic violence occurred throughout the marriage. At trial, she testified that Husband became violent during arguments and explained that he had kicked a hole in the wall and shook a coat hanger in her face. She admitted, however, that he never touched her or physically hurt her.

Additionally, Wife argues that Husband drank excessively and was mentally unstable. The only evidence Wife presented at trial to support these allegations was that Husband got drunk at a Christmas party, that she found numerous beer cans in his workshop and car, and that he had been drinking on a fishing trip. She also testified that he had threatened to commit suicide and had

---

1. Domestic violence was defined by this court as "the parent's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on other persons." *Id.* at 345 (quoting § 452.400(1), RSMo Supp.1993).

checked himself into a hospital for treatment. While Husband admitted that he voluntarily checked himself into a hospital for a day and that he received a statement from the hospital with a primary diagnosis of "alcohol addiction unspecified," he testified that he was not an alcoholic. Furthermore, no medical evidence or testimony was presented regarding a diagnosis of alcoholism. Husband also testified that he was never diagnosed with suffering from suicidal ideations. Unlike in *Gant*, in the case at bar, the record does not reflect irrefuted evidence of domestic violence conduct within the legal definition of "domestic violence." Without more, the trial court was not required to enter written findings regarding domestic violence.

 Furthermore, the trial court's finding that the best interests of the children would be served in Husband's custody was supported by the evidence. Section 452.375.2, RSMo 1994, provides that the trial court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of the child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

§ 452.375.2, RSMo 1994.

The evidence presented at trial demonstrated Husband's desire for custody of the children. He testified that he was capable of caring for them and would devote his life to them. He stated that Wife had told him that her career was more important to her than he or the children.

There was also evidence that Husband was willing to provide a stable home for the children. He testified that he planned to remain in the family home if he got custody. He explained that Wife had told him that she would move the children from the home if she was awarded custody. He also planned to rehire the youngest child's original day care provider.

Finally, evidence was adduced at trial of Wife's unwillingness to allow the children frequent and meaningful contact with their father. Upon separation, Wife told Husband that he could not see the children until he moved out of the home. Additionally, she set the terms of visitation without Husband's consent. He was only allowed to see the children on his allotted days and was berated by Wife if he attempted to visit them at any other time. The evidence, therefore, supports the trial court's award of primary physical custody to Husband. Points one and two are denied.

As her last point on appeal, Wife claims that the trial court erred in valuing and distributing the marital property. Specifically, she claims that she made mortgage payments on the marital home for over six months from the date of trial to the date of the decree, yet the court failed to consider the reduction in the mortgage when distributing marital property.

Wife relies on *In re Marriage of Gustin,* 861 S.W.2d 639, 644 (Mo.App.1993), to argue that the six month delay between the date of

trial and the date of the decree required the court to conduct another hearing to establish a more accurate value of the home after continued payments on the mortgage. In *Gustin*, wife argued that the trial court erred in failing to award her any beneficial interest in the principal asset of the marriage, Applebee's stock, because the court did not utilize the correct date in determining its value. *Id.* at 643. The trial court used a stock valuation of $9.75 per share established prior to trial. *Id.* At trial, the stock had a value of $12.50 per share increasing the total value of the stock by over $2 million. *Id.* The court entered judgment over seven months later.

On appeal to the Western District, this court first recognized that the proper date for valuing marital property in a dissolution proceeding is the date of trial. *Id.* (citing *Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987)). Relying on section 452.330.1, RSMo Supp.1988,[2] this court explained that the valuation of property should be reasonably proximate to the date the division is to be effective and that where assets are subject to ever changing value, the trial court should hold another hearing to establish a valuation as close to the effective date of the division as possible. *Gustin*, 861 S.W.2d at 643–644. It, therefore, held that the trial court failed to value the property at the time of trial and failed to consider the economic circumstances of the parties at the time of the division. *Id.* at 644. The case was remanded to receive evidence of the value of the stock and to consider the economic circumstances of each spouse at the time the division was to become effective. *Id.*

██ The present case is clearly distinguishable from *Gustin*. In *Gustin*, the asset involved was Applebee's stock which is subject to ever changing value. In fact, the stock increased $2 million in just over a month. In this case, the asset in question, a home with a mortgage, is not subject to ever changing value, in a period of a few months, aside from whatever minimal increase in equity results from six or seven mortgage payments which encompass principal, interest,

and real estate taxes. Furthermore, although evidence was introduced at trial that Wife lived in and paid the mortgage on the home after the parties separated, no evidence was presented regarding the payment of the mortgage after trial and before the decree. The trial court, therefore, did not err valuing the home at the time of trial and awarding it to the custodial parent. Point three is denied.

The decree of the trial court is affirmed.

All concur.

---

**2.** The statute required the trial court to divide martial property in such proportions as it deemed just after considering all relevant factors including the economic circumstances of the parties at the time the division of property was to become effective. § 452.330.1, RSMo Supp.1988.