James Leonard HOSACK, Respondent,

v.

Cynthia D. HOSACK, Appellant.

No. WD 53782.

Missouri Court of Appeals,
Western District.

March 3, 1998.

Gwendolyn S. Froeschner, Shurtleff, Froeschner, Bunn & Aulgur, Columbia, for appellant.

Gary L. Stamper, Walther, Antel & Stamper, P.C., Columbia, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

LAURA DENVIR STITH, Presiding Judge.

The court below entered a judgment dissolving the marriage of Cynthia D. Hosack and James L. Hosack, dividing the marital and non-marital property, awarding Ms. Hosack primary physical custody of the children and child support totalling $859.01 per month, and sub silencio denying Ms. Hosack's request for maintenance. Ms. Hosack appeals the trial court's denial of maintenance, various aspects of its division of property, its failure to order Mr. Hosack to pay for his son's post-secondary education despite a willingness and ability on his part to do so, and its failure to order Mr. Hosack to provide health insurance for the children.

We agree with Ms. Hosack that the trial court abused its discretion in denying her maintenance. Because she clearly met the threshold test for maintenance under Section 452.335.1, RSMo 1994, we remand with instructions to the court below to determine the amount of maintenance to which she is entitled. We also agree with Ms. Hosack that we must remand because the court erred in failing to award either party $19,-277.99 in certificates of deposit in Mr. Hosack's and his children's names, and further direct the court to consider how the award of this property affects the fairness of the prior division of the marital property.

We further agree with Ms. Hosack that the court erred in failing to order Mr. Hosack to pay some or all of his son's tuition and expenses for post-secondary education where, as here, the evidence showed the father had the resources and willingness to do so, and in fact was voluntarily doing so. As it appears the major basis of Mr. Hosack's objection to an order directing him to pay these expenses was his concern that the moneys would go to his spouse and might be in excess of those needed for his son's education, the court on remand should consider ordering Mr. Hosack to pay an amount directly to the school or to his son, as appropriate.

Finally, as both parties agree that the court below erred in failing to order Mr. Hosack to pay for health insurance for the children, we remand for entry of an order so requiring. We reject the parties' other claims of error.

## I. FACTUAL AND PROCEDURAL HISTORY

When viewed most favorably to the judgment, the evidence reveals that James L. Hosack and Cynthia D. Hosack were married in Nebraska in 1972. Also in 1972, Ms. Hosack received a Bachelor of Science degree in agricultural economics and a Nebraska teaching certificate. At the time of their marriage, Ms. Hosack was working as a school teacher. She continued in that position for a year or two after the marriage and before the couple had children. Ms. Hosack was primarily responsible for taking care of the couple's children, including, as the children grew older, chauffeuring them to the various activities in which they were involved. In 1988, the couple moved to Missouri. Ms. Hosack has worked at a number of part-time jobs while in Missouri, but none of them as a teacher. Within the five years preceding the dissolution, she had worked part-time at day care centers, and in other minimum wage positions. At the time of dissolution, she was working at Apple Pre–School, on an as-needed basis, for $6.00 to $6.50 per hour. Ms. Hosack was forty-seven years old. At the time of dissolution, Mr. Hosack was fifty years old and had worked as an economist for the United States Soil Conservation Service for twenty-three and one-half years; he was earning $4,485.86 per month. He had several hours of post-graduate work towards an M.B.A.

The Hosacks had two sons together. At the time of dissolution in 1996, the youngest son was fifteen years old and was in the ninth grade; the oldest son was eighteen years old and was a senior in high school. Mr. Hosack testified that the oldest son was enrolled in and would be attending DeVry Institute of Technology in Kansas City, Missouri, beginning in July of 1997 and that this would cost about $9,000 per year, plus room and board. Mr. Hosack testified that he would voluntarily pay for these costs.

Both parties had health problems. Ms. Hosack suffered from depression and high blood pressure, both of which required medication. In January 1995, Mr. Hosack had an aortic aneurysm which damaged an aortic valve and required several surgeries. Mr. Hosack returned home from the hospital on March 10, 1995. Initially, while convalescing, Mr. Hosack was only allowed to get out of bed for fifteen minutes at a time, and visiting nurses and his wife tended to him. Mr. Hosack's condition continued to improve. By the time of trial, Mr. Hosack was working full-time in his previous position.

Ms. Hosack testified that on June 24, 1995, Mr. Hosack became "violent and threatening" during an argument about her and the boys' plans for a trip to Nebraska to visit her family, and her lack of plans to see his mother while there. Mr. Hosack pushed her against the laundry room door and pinned her there and said "If I were O.J., I would do the same thing to you with no regrets." Ms. Hosack called the police, who suggested that one of the two needed to leave. Ms. Hosack and the children, therefore, took the trip she had been planning and stayed for three weeks instead of one week as originally planned. She testified that prior to planning this trip, her husband's nurses had assured her that Mr. Hosack could take care of himself in her absence, and that he could drive, go to work, and feed himself. Ms. Hosack also testified that Mr. Hosack had been violent in the past, but that she had not called the police on these previous occasions.

On July 14, 1995, Mr. Hosack was removed from the family home in accordance with an ex parte order of protection filed by Ms. Hosack upon her return from her trip. After a hearing, on August 4, 1995, and by consent of both parties, the court entered a full order of protection for 180 days. Mr. Hosack denied the allegations of abuse and testified that, in fact, he was the "abused person." Although Mr. Hosack went to see a counselor after the protective order was entered, he claimed he went because Ms. Hosack had abused him.

On August 8, 1995, Mr. Hosack filed a Petition for Dissolution. On November 5, 1996, the court granted Mr. Hosack's Peti-

tion, finding the marriage to be irretrievably broken. It awarded custody of the children to Ms. Hosack and ordered Mr. Hosack to pay $859.01 per month in child support. The court expressly adopted Mr. Hosack's Form 14 in making this award. The judge also divided all of the couple's separate and marital property, except $19,277.99 held in Certificates of Deposit (CDs). He failed to rule on Ms. Hosack's request for maintenance. Ms. Hosack filed a motion to set aside judgment, for new trial, or entry of judgment for her. This motion was also denied. This appeal follows.

## II. STANDARD OF REVIEW

Our review of a court-tried case, such as this one, is limited, and "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In a dissolution case, the trial court's determination must be given even greater deference that in other cases. *Humphrey v. Humphrey,* 888 S.W.2d 342, 345 (Mo.App. 1994). We must affirm the trial court's judgment, under any reasonable theory supported by the evidence, unless we are left with a firm belief that the trial court's judgment was incorrect. *Guier v. Guier,* 918 S.W.2d 940, 946 (Mo.App.1996).

## III. DIVISION OF PROPERTY

Ms. Hosack asserts that the court below erred in its division of marital property, resulting in an inequitable division of marital property, by: 1) not considering the husband's misconduct during the marriage; 2)

not considering the relative disparity of the parties' income and resources; and 3) not dividing $19,277.99 in CDs that her husband acknowledged were in his name.

*A. The Overall Division of Property was Adequately Supported by the Record and Was Fair and Equitable.*

In dividing the nonmarital property, the court awarded Mr. Hosack the property listed on his Exhibit 14. That exhibit was not included in this record and there was no testimony as to what it listed as the total value of his separate property. We, therefore, have no basis on which to assess the value of his separate property, except to note that the testimony does show that the award included Mr. Hosack's guns, with a stipulated value of $1,850.00. The court awarded Ms. Hosack the household property, which had been appraised by Mr. Hosack's experts at a value of $10,585.00,[1] and which the parties stipulated to as her separate property. The appraised value, however, included the value of the guns. Because Mr. Hosack, rather than Ms. Hosack, was in fact awarded the guns, the value of the household property awarded to Ms. Hosack was, thus, $8,735.00. We are unable to determine how this compares to the non-marital assets awarded to Mr. Hosack, since, as noted, the record does not reveal their value.

We turn to the division of marital property under Section 452.330.[2] The division of marital property does not have to be equal, but it must be "fair and equitable." *Whitworth v. Whitworth,* 806 S.W.2d 145, 150 (Mo.App.1991), citing *D'Aquila v. D'Aquila,* 715 S.W.2d 318, 320 (Mo.App. 1986). In dividing the marital property, the court found that Mr. Hosack's civil service retirement system benefits had a value of $231,711.00. It ordered half of these bene-

---

1. Although Mr. Hosack's Exhibit D and his testimony, both of which were based on his own best estimate of the value of the contents of the house, indicated that the value of the property in the house was $90,750.00, his own experts disagreed with this appraisal. Because the parties stipulated to the nonmarital nature of this property, because none of this property is claimed to be

income-producing, and because we have no evidence of the value of the property awarded to Mr. Hosack as separate property, resolution of this discrepancy is not essential.

2. Unless otherwise indicated, all statutory references are to RSMo 1994.

fits to be paid to Ms. Hosack and the other half to be paid to Mr. Hosack, when they became payable. The court awarded Ms. Hosack additional marital property with a value of $164,364.39, and marital debt, a mortgage, of $71,618.00. Thus, the net value of the marital property Ms. Hosack received was $208,601.89 ($115,855.50 retirement, plus $164,364.39 other assets, minus $71,618.00 mortgage). This amount included $49,441.39 in liquid assets, substantially in the form of the CDs.

In addition to his share of his retirement benefits, the court awarded Mr. Hosack assets with a value of $99,701.91. This included land, an RV, two trailers, a van, a life insurance policy and $69,201.91 in liquid assets ($53,837.91 of these liquid assets were in stocks and $15,364.00 were in a savings plan). It further ordered him to pay all marital debt which had not been assigned to Ms. Hosack. The only evidence of any debt, besides the mortgage Ms. Hosack was ordered to assume, was Mr. Hosack's claim that he had received $15,000.00 from his mother and $3,000.00 from his brother as loans, after the separation. The court made no finding as to whether these were legitimate marital debts. If the court found these to be legitimate marital debts, the net value of the marital property Mr. Hosack received was $197,-557.41 ($115,855.50 retirement, plus $99,-701.91, minus $18,000.00 debts to his family). If the court did not find that these were legitimate marital debts, Mr. Hosack received $215,557.41 net marital property. The overall marital property division ratio, thus, was either 51.4% to 48.6% in Ms. Hosack's favor, or 49.2% to 50.8% in Mr. Hosack's favor, depending upon whether the court considered Mr. Hosack's loans from his family marital debts. In either event, the award of marital property was substantially equivalent to both parties.

Ms. Hosack argues that this division was improper and that, due to Mr. Hosack's misconduct and other factors set out in § 452.330.1, she should have received a greater percentage of the property. Section 452.330.1 states:

1. In a proceeding for dissolution of the marriage ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1.

When reviewing the lower court's division of property we will presume the court's division is correct. *Replogle v. Replogle,* 903 S.W.2d 551, 556 (Mo.App.1995). Where, as here, the parties did not ask for findings of fact and the court did not address the statutory factors specifically, we will also presume that the court below considered all of the evidence before it in light of the relevant factors in dividing the property. *Monsees v. Monsees,* 908 S.W.2d 812, 815 (Mo.App.1995). We will give deference to the lower court's superior ability and opportunity to determine the witnesses' credibility, *McMickle v. McMickle,* 862 S.W.2d 477, 481 (Mo.App.1993).

Here, the court below did have before it evidence of Mr. Hosack's misconduct, one of the statutory factors Ms. Hosack claims the court did not consider. Ms. Hosack testified that on June 24, 1995, Mr. Hosack became "violent and threatening" to her and pushed her against the laundry room door and

pinned her there and said, "If I were O.J., I would do the same thing to you with no regrets." She testified that this incident began over an argument about her and the boys' plans for a trip to Nebraska to visit her family, and her lack of plans to see his Mother while there. Ms. Hosack called the police after this incident. As noted earlier, ultimately a full order of protection was entered. Mr. Hosack denied the allegations of abuse. Although Mr. Hosack went to see a counselor after the protective order was entered, he claimed he went because Ms. Hosack had abused him.

Certainly § 452.330.1 required the court to consider this evidence. The court could make its own judgments as to credibility, however. Moreover, even if it believed Ms. Hosack's testimony, this would not, in itself, preclude the court from dividing the marital property in a substantially equal fashion if the court determined this was proper in light of all of the factors set out in § 452.330.1. In the absence of a request for specific findings of fact and conclusions of law, we will presume that the court considered and weighed this evidence in making its property division and we will defer to its determination of these witnesses' credibility. *Monsees,* 908 S.W.2d at 815 ("There is no rigid formula setting forth the weight to be given to each relevant factor ... it is presumed that the trial court considered all of the evidence in dividing the marital property"); *McMickle,* 862 S.W.2d at 481 ("Due regard is given to the trial court's superior ability to view the witnesses and determine their credibility").

Ms. Hosack also argues that the court below failed to consider the parties' disparate incomes and resources. The court did have evidence before it that Mr. Hosack's income was greater than Ms. Hosack's. We will address this further in the context of the request for maintenance. As noted above, however, the parties' other resources after the marital property division do not appear to be substantially different from each other. The value of the separate property awarded to Mr. Hosack was not presented to this Court, but was presented to the court below. We will, again, presume that the court considered this evidence in making its property division. We must give great deference to the motion court's division of property and will only reverse if the division "is so heavily and unduly weighted in favor of one spouse that it amounts to an abuse of discretion." *Whitworth,* 806 S.W.2d at 150, citing *Harper v. Harper,* 764 S.W.2d 480, 482 (Mo.App. 1989). We find no such abuse here.

*B. Court Shall Award the $19,277.99 in CDs Which were not Divided.*

Ms. Hosack also argues that the division of property was unfair because $19,-277.99 worth of additional CDs shown in Ms. Hosack's Exhibit W were not divided by the court. This exhibit listed three accounts, with an aggregate value of $19,277.99, which Mr. Hosack had failed to disclose to the parties or to the court. During his testimony, Mr. Hosack claimed he was not aware of these accounts, although his and his children's names were on them and the bank addressed the statements of these accounts to the marital address.

As Mr. Hosack did not disclose these accounts to Ms. Hosack before trial, as required to do by law, the court did not have before it evidence of whether these accounts were marital or nonmarital. The court was required to distribute these assets. On remand, we direct the motion court to hear evidence as to the character of these CDs and to award them accordingly.[3] If the parties on remand request specific findings of fact and conclusions of law, the court should issue such findings as to all issues as to which findings are requested and is free to reevaluate its division of property in light of the additional $19,277.99 in CDs, in light of any relevant developments since the entry of

---

3. The usual remedy for failure to divide property where the dissolution is already final is a separate suit in equity to determine ownership of the omitted property. *VanSkike v. VanSkike,* 858 S.W.2d 779, 782 n. 3 (Mo.App.1993) (citation omitted). However, because we remand on other grounds, we direct the court to divide the property on remand. *Id.*

its prior order, and in light of such other relevant evidence as is presented on remand.

## IV. MAINTENANCE

Ms. Hosack also argues that the trial court abused its discretion in denying her maintenance because Ms. Hosack clearly met the threshold test for maintenance. Mr. Hosack counters that the court did not err in failing to accord maintenance, because Ms. Hosack was capable of supporting herself through appropriate employment and the use of the marital property awarded to her.

■ Section 452.335 governs the award of maintenance. Section 452.335.1, provides the two-part "threshold test" for an award of maintenance. *Schroeder v. Schroeder,* 924 S.W.2d 22, 25 (Mo.App.1996). It states that:

1. In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

§ 452.335.1. To proceed under the statute, the court must first determine the reasonable needs of the spouse seeking maintenance, *Brueggemann v. Brueggemann,* 551 S.W.2d 853, 856 (Mo.App.1977), and then determine whether the spouse is able to provide for these needs through use of property or appropriate employment. *Schroeder,* 924 S.W.2d at 25.

■ Mr. Hosack argues that Ms. Hosack improperly included expenses incurred be-

cause of her children on her statement of income and expenses. He argues that inclusion of these expenses would permit her to recover more child support than approved in the court's Form 14. We agree that, in listing expenses for the children for purposes of determining maintenance, a party should use the Form 14 amount unless the court has found the Form 14 amount to be unjust and inappropriate and has utilized another amount in determining support. To these amounts, she should add her own reasonable household expenses to determine her reasonable needs. Where, as here, the marriage is one of long duration in which Ms. Hosack gave up her career development, the court should look, in part, to the marital standard of living in determining her reasonable needs.[4] The court must then consider Ms. Hosack's ability to meet those expenses through her employment and investment income, adding to this amount the child support provided by Mr. Hosack. If these three sources are not adequate to meet her needs, then, to that extent, her expenses exceed her income and the court should consider this disparity in deciding whether maintenance is required.

■ Here, Ms. Hosack's total expenses on her income and expense statement were $2,071.83 per month. This included $981.00 for children's expenses whereas under the Form 14 adopted by the court she should have included only $955.00 as expenses for the children. However, Ms. Hosack's listed expenses did *not* include the $750.00 per month for the mortgage payment which is a debt the court awarded to her, but which her husband was paying at the time. Thus, this is an additional expense. The uncontradicted record reveals that Ms. Hosack's total expenses were $2,795.83 per month ($2,071.83 expenses listed minus $26.00 in excess listed children's expenses plus $750.00 mortgage

---

4. [R]easonable needs may not necessarily equal the standard of living which the couple had established during the marriage, [i]n a marriage of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as an important guide in computing the spouse's reasonable needs. In a very practical sense it is frequently the best evidence of what the parties have together determined their 'reasonable needs' to be. *Brueggemann,* 551 S.W.2d at 857.

payment).[5]

Once the court determines a spouse's reasonable needs, it must then consider whether the spouse seeking maintenance has sufficient property to provide for these needs. *VanSkike v. VanSkike*, 858 S.W.2d 779, 780 (Mo.App.1993), citing *Whitworth v. Whitworth*, 806 S.W.2d 145, 148 (Mo.App.1991). The focus of this statutory provision is on income-producing property. *Brueggemann*, 551 S.W.2d at 857.

Ms. Hosack was awarded $49,441.39 in liquid assets in the form of CD's. CD's earn a conservative rate of interest which Mr. Hosack concedes could be in the neighborhood of 5%. If we assume she earned 5% interest yearly on $49,441.39, she could earn $206.01 per month in interest. As Mr. Hosack concedes in his brief, this is not, in itself, sufficient property to meet Ms. Hosack's needs. The court was, thus, required to examine whether her reasonable needs could be met through appropriate employment. *VanSkike*, 858 S.W.2d at 780, citing, *Whitworth*, 806 S.W.2d at 148.

■ A court can impute income to a spouse seeking maintenance "according to what he or she could earn by use of his or her best efforts to gain employment suitable to his or her capabilities." *Schroeder*, 924 S.W.2d at 27. Ms. Hosack said she was earning $283.00 per month as a part-time child care worker. The court imputed additional income to her in the Form 14 it adopted, however, finding that she could earn $487.00 per month. Mr. Hosack argues that his expert's testimony established that Ms. Hosack's "prognosis for future employment" was good and that there were teaching positions available in her town which would pay between $18,000.00 and $25,000.00 per year. Therefore, Mr. Hosack argues, the court below likely imputed income of at least $18,000.00 to Ms. Hosack when making its decision to deny her maintenance. We disagree.

First, we note that the expert's testimony, contained in Exhibit 20, has not been filed in this Court. According to Mr. Hosack, however, the expert testified simply that there were many jobs for qualified teachers in the Columbia area and that *"in the future"* she could earn $18,000—$25,000 in one of these teaching positions. Mr. Hosack did not dispute that Ms. Hosack has never been a teacher in Missouri and has not taught anywhere in over twenty years. She taught home economics in Nebraska for a couple of years after 1972. Ms. Hosack has never held a Missouri certificate of license; one cannot teach in the public schools in Missouri without such a certificate. § 168.011. Ms. Hosack testified that, in order to receive such a certificate, she would require many hours of further education.

■ In awarding or limiting maintenance "[n]either an appellate court [n]or a trial court may speculate on what the future might justify; rather such a determination should be made in a proceeding for modification of the award upon a showing of changed circumstances." *Whitworth*, 806 S.W.2d at 148, citing *Mueller v. Mueller*, 782 S.W.2d 445, 448 (Mo.App.1990). While the court below could accept the expert testimony as to what Ms. Hosack could make in the future as a teacher, the question in deciding maintenance is what she can make now. Ms. Hosack testified she would, at the least, have required the additional training necessary for certification before she could teach again, and that her almost twenty-five-year-old

5. On appeal, Mr. Hosack also objects to Ms. Hosack's inclusion of $55.00 per month in church and charitable contribution. As he did not object to or contradict this expense at trial, he cannot raise this for the first time on appeal. In any event, we have approved such expenses where they fit within the parties' overall pattern of spending prior to the dissolution. *Brooks v. Brooks*, 957 S.W.2d 783 (Mo.App.W.D.1997). We also note the that Mr. Hosack himself listed on his expense statement $80.00 per month for charitable contributions. While the court below had no further evidence on this point, this indicates that the parties likely made charitable contributions during their marriage. As we held in *Brooks*, "the law is that modest charitable contributions which were engaged in throughout the course of the marriage may be included when figuring the wife's reasonable expenses."

teaching experience in Nebraska would not enable her to obtain a job in Columbia, Missouri, now. On these facts, to impute a teacher's salary to her after such a long absence from the workforce would have been speculative, at best. If the court did this—which we doubt—it was an abuse of discretion. *See, e.g., Allen v. Allen,* 961 S.W.2d 891 (Mo.App.W.D.1998). See also, *Brock v. Brock,* 936 S.W.2d 882, 886 (Mo.App.1997) (holding no abuse of discretion when trial court concluded wife, who had been out of education field for eighteen years, was not immediately employable.)

■ Of course, since the court did not make a finding as to maintenance or as to its belief as to Ms. Hosack's future employability, we cannot know on what it based its denial of maintenance. This greatly hampers our review. It is a far better practice, and one which should be followed on remand, to expressly rule on a request for maintenance. In the absence of such a ruling, and given the speculative nature of the expert's testimony and the fact that the court adopted a Form 14 imputing income of $487.00 per month to Ms. Hosack, we will presume that the court must have imputed $487.00 per month income to her in determining her need for maintenance. To this, we add the $206.01 she could earn in interest on her CD's and the child support payments of $859.01. Thus, her total income was $1,552.02 per month. Because Ms. Hosack's total expenses (as modified above) were $2,795.83 per month, this leaves her with expenses in excess of her income by $1,243.81 per month. Thus, we find Ms. Hosack clearly met the threshold test for an award of maintenance under Section 452.335.1.

■ The threshold test for eligibility under Section 452.335.1 having been met, the court should have considered the nonexclusive list of factors in Section 452.335.2 to determine the amount and duration of maintenance. *Id.; Brueggemann v. Brueggemann,* 551 S.W.2d 853, 856 (Mo.App.1977). That section states:

2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

§ 452.335.2. The court is not required to address each of these factors in determining the amount and duration of maintenance that is appropriate. *Schroeder,* 924 S.W.2d at 26, citing *McCallister v. McCallister,* 809 S.W.2d 423, 429 (Mo.App.1991). Rather, the court uses these factors to balance the reasonable needs of the spouse seeking maintenance with the ability of the other spouse to pay. *Schroeder,* 924 S.W.2d at 26, citing *Bixler v. Bixler,* 810 S.W.2d 95, 99–100 (Mo.App.1991).

Here, the court did not rule on the request for maintenance and instead by its silence denied any award for any period of time.

Thus, as noted above, we do not know on what it based its denial of maintenance. We have, therefore, reviewed the evidence in the record relevant to all of the factors set out in § 452.335.2 in order to determine whether the court below abused its discretion in failing to award any maintenance at all. As will become evident, we have already addressed the evidence on nearly all of these factors in some detail.

In particular, we have just addressed the first factor—the financial resources of Ms. Hosack. These resources may change somewhat on remand, however, once the court adjusts the property division in light of the $19,277.99 in CD's which the court must award on remand. We have also addressed the second, third, fourth and sixth factors— that is, the time necessary to acquire sufficient education to find appropriate employment, the comparative earning capacity of each spouse, the marital standard of living, and the duration of the marriage. The latter two factors are of particular importance in a case such as this in which the marriage is of long duration and the spouse gave up her career during the marriage.[6] The fifth factor is the parties' marital and non-marital assets. We have discussed those above. They show a fairly equal division of marital property, but we were unable to assess the division of nonmarital property as the record does not show the value of the property awarded to Mr. Hosack and we were unable to consider how the award of the $19,277.99 in CDs will affect the division.

We have also already mentioned the record evidence about factor seven, the age and physical and emotional condition of Ms. Ho-

sack, and factor nine, the conduct of the parties. The evidence showed that Ms. Hosack, like her husband, has health problems and that she received an order of protection as to him.

The final factor is Mr. Hosack's ability to pay. The evidence showed that Mr. Hosack's income was $4,485.86 per month. To this must be added interest which Mr. Hosack could earn on the $69,201.91 in liquid assets which he was awarded. This interest is likely to run between $288.34 (assuming a conservative 5% rate of interest like that earned by Ms. Hosack on her CDs) and $519.01 per month (if we assume that he could earn at least the statutory rate of 9% since his assets are in the form of stocks and a savings plan). Accordingly, Mr. Hosack's income was between $4,774.20 and $5,004.87 per month, depending on the rate of interest he earns.

Mr. Hosack's listed expenses total $3,178.00 per month. However, this amount includes $350.00 for maintenance (which he listed prior to learning that the court would not award maintenance). If we subtract the $350.00 for maintenance which he has not been ordered to pay, his monthly expenses total $2,828.00 This leaves him with between $1946.20 and $2,176.87 in monthly income in excess of his expenses.

Considering the evidence on these factors *en toto*, we are convinced that the trial court abused its discretion in failing to award any maintenance. The evidence could only support the conclusion that Ms. Hosack had insufficient funds to meet her reasonable needs, that Mr. Hosack had sufficient funds

6. Although Missouri's Dissolution of Marriage Act emphasizes self-sufficiency of both parties following dissolution, this:

does not ... require us to totally ignore the fact that a marriage did exist. In many marriages by tacit or express agreement, the wife remains at home and cares for the children and forgoes her opportunity to develop a career or acquire job experience. Where such a spouse has been out of the job market for extended periods, an independent determination of her appropriate lifestyle and earning capacities may be difficult or impossible. **In**

**such a case it may be proper for the court to place greater emphasis on the lifestyle enjoyed during the marriage, the duration of the marriage and other traditional factors.**

*Brueggemann*, 551 S.W.2d at 858 (emphasis added). In this case, Ms. Hosack initially stayed at home to raise the couple's two children, and thereby, removed herself from the job market for an extended period of time. The part-time minimum wage jobs she has sporadically held do not negate the impact of this absence on her career as a teacher.

to assist her, and that the other factors set out in Section 452.335.2 are all either neutral or favor the award of maintenance. Accordingly, we reverse and remand this issue for resolution by the trial court with instructions to make the determination of the amount and duration of maintenance to award Ms. Hosack after considering all relevant factors in a manner not inconsistent with this opinion. This amount will presumably be affected by the court's determination of how much Mr. Hosack should pay toward his son's college expenses, as discussed immediately below.

## V. FAILURE TO AWARD AN UPWARD DEPARTURE FROM FORM 14'S PRESUMED AMOUNT FOR HIGHER EDUCATION EXPENSES

 Ms. Hosack argues that the court erred in failing to find 'the child support calculation made pursuant to Form 14 was unjust and inappropriate and in failing to order Mr. Hosack to pay for the higher education costs of their eldest son. Although not all parents will be liable for post-secondary education costs, the "trial court must ... consider educational expenses, including college costs, in determining what child support should be awarded, and if appropriate should adjust the presumed child support amount to accommodate college costs." *Shiflett v. Shiflett*, 954 S.W.2d 489, 493 (Mo.App.1997), citing *DeCapo v. DeCapo*, 915 S.W.2d 343, 346 (Mo.App.1996); *Mistler v. Mistler*, 816 S.W.2d 241, 255 (Mo.App.1991).

 A court may account for post-secondary education costs in two ways. It may include these expenses on its Form 14 as an extraordinary expense, which will result in each parent paying a proportionate share of these costs. Alternatively, a court may find the amount figured on Form 14 unjust and inappropriate and add to this amount a "just amount for college expenses." *Shiflett*, 954 S.W.2d at 493. Whichever approach is used, in determining what, if any, expenses to award for higher education the court must consider the following factors:

"[1] the financial ability of the father; [2] the ability and capacity of the child for college work; [3] the nearness of the child to his [or her] majority; [4] whether the child is self-supporting or not, and [5] the father's willingness to provide for such education, as shown by some agreement or other indication on his part."

*Shiflett*, 954 S.W.2d at 494 (citations omitted).

 Here, as in *Shiflett*, the court failed to consider all of these factors in concluding that Mr. Hosack was not to be ordered to pay any of his child's educational expenses. Here, Mr. Hosack is financially able to pay some or all of these costs, which Mr. Hosack testified would be between $9,000 and $10,000 per year, not including room and board. Here, as in *Shiflett*, there is no contention that this couple's eldest son was not able to perform college work. Further, while not a minor at the time of trial, this son was merely eighteen and still a senior in high school. There is no evidence that he was capable of supporting himself. Although Mr. Hosack claims that his mother is putting money away for these children, he did not testify that this money would allow his son to be self-sufficient.

The reason why the court did not award any moneys for college may have to do with the final factor for consideration, the father's willingness to pay for college. Very commendably, Mr. Hosack testified at trial that he was very willing to pay for his children's higher education costs. At oral argument he stated that he was, in fact, now paying for his son's tuition at DeVry Technical Institute. However, he argues that because, as of the date of trial, no children were enrolled in or attending college, it would have been improper to "have ordered additional child support in advance of actual enrollment[. This] would have occasioned a virtual windfall to Wife from November 1996 through October 1, 1997. It makes more sense for the trial court to take the father at his word and, in the event he breaches his agreement to pay for his eldest son's education, modify the child support payment on the basis of facts then existing."

First, it is doubtful whether a court could modify the decree to include college expenses where, as here, the expenses were anticipated at the time of the dissolution but not provided for, as a change of circumstance is required for modification. Second, while Mr. Hosack's desire not to pay extra child support for college expenses before they are incurred is understandable, that is not what is required when a court orders a parent to pay all or part of college expenses. Where, as here, it is agreed that the child will attend a particular school—in this case, DeVry Technical Institute—then the court can order the parent to pay an amount not exceeding all or a set part of the child's expenses at that or a comparably priced institution as those expenses are incurred. There is no requirement that payments for education be made to the ex-spouse or that they be made prior to the receipt of a bill for those expenses. The court can also order this aspect of support to be paid directly to the child or to the institution rather than to the former spouse.

Here, true to his promise (according to Mr. Hosack's attorney), Mr. Hosack is paying for his son's college expenses by paying them directly to DeVry. It would be appropriate to include an order so requiring in the decree on remand or to make such other payment arrangement as the court finds best on remand in light of this discussion.

## VI. ERROR IN NOT REQUIRING CHILDREN TO BE COVERED BY HUSBAND'S HEALTH BENEFIT PLAN

The court below adopted Mr. Hosack's Form 14 in determining the presumed correct child support to be $859.01 per month. The Form 14 did not show any amount for health insurance, and the court did not include a direction to pay any such amount in its order. Ms. Hosack argues that the court erred in not ordering Mr. Hosack to provide health insurance coverage for the children.

Section 454.603 states that, when the circuit court has jurisdiction to establish an order for child support in a dissolution proceeding, the court "may require that a child be covered under a health benefit plan. Such a requirement *shall* be imposed whenever a health benefit plan is available at reasonable cost through a parent's employer or union." § 454.603. Thus, the court is required to order that a parent provide a child with coverage where there is evidence that the parent is able to do so through his employer at a reasonable cost. *See Pease v. Pease,* 877 S.W.2d 681 (Mo.App.1994). Mr. Hosack testified that he provided the children with health insurance at a monthly cost to himself of $26.47. There was no evidence presented that Ms. Hosack, as a part-time employee, would have similar benefits available to her. Thus, Section 454.603 required the court to order Mr. Hosack to provide this coverage. Mr. Hosack concedes the court erred in failing to include health coverage, but argues that no reversal is necessary as he consents to entry of such an order pursuant to Rule 84.14. Given our disposition of the other points on this appeal, we remand with instructions to the court below to order Mr. Hosack to provide coverage under his health benefit plan for his children.

Accordingly, we reverse and remand this case with instructions to the trial court to consider the statutory factors, in particular Mr. Hosack's agreement to pay the full expenses of his son's higher education if he can pay it directly, and to determine the amount the court should require Mr. Hosack to pay toward his children's education. This determination must be made prior to the maintenance award, as it is likely to affect the parties' needs and ability to pay. The court shall also expressly determine that maintenance is necessary and must determine how much maintenance should be awarded. It must also award the $19,277.99 of CDs on remand. It may take such additional evidence as it needs to make these determinations, taking into consideration relevant evidence offered by the parties as to developments since the time of the prior hearing, and may adjust the award of other property if appropriate in light of its other orders on remand.

All concur.