**Christopher Mark HENNESSEY,
Respondent,**

v.

**Jamie Ann SMITH–HENNESSEY,
Appellant.**

No. WD 56008.

Missouri Court of Appeals,
Western District.

Aug. 3, 1999.

1. All statutory references are to RSMo 1994.

Thomas Dean Munro, Kansas City, for Respondent.

James Allen Kessinger, Kansas City, for Appellant.

HANNA, Judge.

The wife/mother, Jamie Ann Smith–Hennessey, challenges the trial court's determinations with regard to the dissolution of her marriage to the husband/father, Christopher Mark Hennessey, on May 20, 1998. Specifically, the wife contends that the trial court erred in awarding primary custody of their 10–year old daughter to the husband because the trial court did not make a specific finding indicating that its decision best protected the child and other parent from abuse. She also claims the trial court erred in declaring that the presumed correct child support amount was "unjust and inappropriate," because it failed to articulate its findings before deviating from the presumed correct child support amount. Finally, she asserts that the trial court abused its discretion in failing to award her maintenance, and in only awarding her $1000 in attorney fees. We remand to the trial court for consideration of these issues.

The parties separated in July 1996, after a 10–year marriage. Their only child, Sarah, was 10 at the time of the trial. Early in the marriage, both parties smoked marijuana and used alcohol to excess. Both sides presented evidence indicating that the other party still abused alcohol. There was evidence that the father had just recently been charged with his fourth DWI, and that he had admitted he was an alcoholic to their marriage counselor. The mother's personal counselor testified that the mother was an excessive drinker, and that she had been diagnosed with numerous mental disorders.

The mother made several accusations regarding past domestic violence by the father against herself and their daughter. The father admitted that he had been violent with his wife once in the past, but denied all other allegations of abuse. The child's counselor's notes indicated that in the past the father had shoved the child into the wall. The child's counselor testified, on the first day of trial, that the parties should share joint custody of the child. On the second day of trial, which took place almost five months later, she testified that she now strongly believed that the father should get custody because the mother seemed incapable of being emotionally nurturing to the child. She also testified that the child seemed tense with her mother, but very happy with her father.

The husband was working for Missouri Gas and Electric, and was making $19.21 per hour at the time of trial (between $38,000 and $41,000 per year). The wife worked part-time during the marriage. At the time of trial, the wife had started a baking business that employed between five and eight employees. In 1997, she withdrew $400 per month as salary, and received $500 per month in child support. Additionally, she relied upon public assistance. At the time of trial, her monthly expenses were $2190 per month, plus $300 per month for insurance.

In her first point, the wife contends that there was evidence of domestic abuse presented in the form of notes made by the child's counselor, testimony from the wife, testimony from the husband himself, and testimony from the husband's stepmother. Thus, the wife maintains that the court was required to make specific findings "to show that the custody … arrangement … best protects that child and the parent who is the victim of domestic violence from any further harm." § 452.375.12, RSMo.1994.

Our review of a court-tried case, such as this one, is governed by the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "In a dissolution case, the trial court's determination must be given even greater deference than in other cases." *Humphrey v. Humphrey*, 888 S.W.2d 342, 345 (Mo.App.1994). We must affirm the trial court's judgment, under any reasonable theory supported by the evidence, unless we are left with a firm

belief that the trial court's judgment was incorrect. *Hosack v. Hosack*, 973 S.W.2d 863, 867 (Mo.App.1998).

> Section 452.375.12, requires that:
>
> If the court finds that domestic violence has occurred, the court shall make *specific findings of fact* to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm.

(Emphasis added).

■ The first issue before us is whether the court was required to make a finding, under this statute, as to whether domestic violence had occurred. In the case of *Gant v. Gant*, the court considered whether the "trial court was required to make a determination on the record as to whether domestic violence, or a pattern of domestic violence, had occurred." 892 S.W.2d 342, 344 (Mo.App.1995). This court, construing §§ 452.375.2(5) and 452.375.11, RSMo Supp.1993, which has been recodified as § 452.375.12, indicated that it was mandatory for the court "to make a record determination as to whether domestic violence had occurred." *Id.* Similarly, in *Carter v. Carter*, the court remanded the case, under § 452.375.12, in order for the trial court to determine whether the alleged domestic violence occurred and, if so, to make specific findings that its custody order best protects the child from future harm. 940 S.W.2d 12, 16 (Mo.App.1997). In both *Gant* and *Carter*, there was "substantial evidence in the record of domestic violence." *Gant*, 892 S.W.2d at 346; *Carter*, 940 S.W.2d at 15 (indicating that the record "established frequent beatings and other physical attacks").

In *Kinder v. Kinder*, this court again discussed whether the trial court erred in failing to make a finding with regard to the occurrence of domestic violence. 922 S.W.2d 398, 399 (Mo.App.1996). In that case, this court determined that the facts "did not require the trial court to state directly whether it believed that domestic violence had occurred" because "the record does not reflect irrefuted evidence of domestic violence conduct." *Id.* at 400–01. In *Kinder*, the wife admitted that her ex-husband never touched her or physically hurt her. *Id.* As such, the court ruled that "[w]ithout more, the trial court was not required to enter written findings regarding domestic violence." *Id.* at 401. *See also Baker v. Baker*, 923 S.W.2d 346, 348 (Mo.App.1996)(specifically ruling that the wife's evidence was not credible). *See also Posey v. Posey*, 950 S.W.2d 334, 334 (Mo.App.1997); *Courtney v. Courtney*, 959 S.W.2d 124, 125 (Mo.App.1998).[1]

Here, in addition to the wife's allegations, there was a significant amount of evidence presented that domestic violence was a fact during the parties' marriage. The wife testified as to three specific incidents of domestic violence against her, as well as general violence against their daughter. She also testified about one episode in which he "chased her down with the car" and then "manhandled" her and ripped her dress while she was pregnant. The child's counselor testified that Sarah told her that "Dad picked Mom up by the throat" one time, and that he took Sarah "by the jaw one time and shoved her into the wall." The counselor also testified that she believed the child to be honest and truthful. The husband's stepmother testified that she once observed bruises on the wife's arm, and that their house appeared to be disturbed as a result of a physical fight. Finally, the husband admitted that he "pulled [his wife] by the arm and ... held her against the wall." Additionally, there was some evidence pre-

---

1. The husband refers us to *Hamilton v. Hamilton*, decided prior to our decision in Gant, in which the court found that it could not agree with the wife that "two incidents occurring years apart during a twenty year marriage, in themselves, constituted a pattern of domestic violence." 886 S.W.2d 711, 715 (Mo.App. 1994).

sented that the mother is capable of violence against the husband.

This evidence was more than sufficient to require that the trial court make a finding as to whether domestic abuse had occurred and specific findings of fact as to the best interest of the daughter in light of the domestic violence. As such, we remand the case to the trial court for a determination under § 452.375.12.

The wife next raises three separate challenges with regard to the trial court's determination to award the father physical custody of Sarah. Although there is substantial evidence to support the trial court's decision to award custody to the father, we need not address those complaints in light of our decision to remand the case for specific findings of fact as to how the domestic violence bears on the best welfare of the daughter. It is for the trial court to determine custody in light of all the evidence and its domestic violence findings.

■■■ "The trial court has broad discretion in determining matters involving child custody, and that decision will be affirmed unless the appellate court is firmly convinced that the welfare of the children requires a different disposition." *In re Marriage of Powell*, 948 S.W.2d 153, 156 (Mo.App.1997). In reviewing an award of custody, we are to presume that all evidence was considered by the trial court. *Id.* (citing *In re Marriage of Patroske*, 888 S.W.2d 374, 383–84 (Mo.App.1994)). But, on the other hand, the court is required to make a specific finding under § 452.375.12, whether domestic violence occurred and, if so, whether its custody order best protects the child from future harm. *See Kinder v. Kinder*, 922 S.W.2d 398, 399 (Mo.App. 1996). As discussed *supra*, no specific findings with regard to the issue of domestic violence were made in this case.

■■ In her second point, the wife argues that the trial court erred when it failed to find, for the record, the presumed correct child support amount. The wife claims that the trial court appears to have rejected or rebutted the parties' Form 14, in that it refused to include the child's orthodontia expenses in its child support calculation. The wife contends that the court erred by failing to make a specific finding as such. The husband claims that the trial court accepted his Form 14, and then properly rebutted the inclusion of orthodontia as more appropriately paid by the parties pursuant to their percentage of income.

In *Woolridge v. Woolridge*, this court provided a two-step procedure for trial courts to follow when assessing child support pursuant to Child Support Civil Procedure Form 14, §§ 452.340.7 and 452.340.8, RSMo 1994, and Rule 88.01. 915 S.W.2d 372, 379 (Mo.App.1996)(approved by *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997)). Step one requires the trial court to make a mathematical determination of the presumed correct child support amount, pursuant to a correct Form 14 calculation. *Woolridge*, 915 S.W.2d at 379. The second step requires that the court consider whether to rebut the presumed correct child support amount, as being unjust or inappropriate, after consideration of all the relevant factors. *Id.* The second step "permits the trial court to exercise its broad and sound discretion in the final determination of child support awards." *Id.*

■■ After the presentation of evidence, the court asked the parties' attorneys to each submit to the court a proposed Form 14 with a proposed draft decree of dissolution. The proposed Form 14s are not a part of the record.[2] The trial court, in its judgment, found that the father's monthly gross salary was $3329.73, and the mother

2. We note that the petitioner has apparently attached his proposed Form 14 to his brief. We do not consider it, however, as it violates Rule 84.04(h) which states that "exhibits or

exerpts from the record may be included only if the original exhibits … are properly filed and made part of the record."

was imputed income of $866 per month. The court then found that the child was in need of orthodontia and "with regard to this expense the child support amount mandated by Missouri Supreme Court Rule 88 is unjust and inappropriate." As such, the court ordered that this expense not be included in the child support amount, "but shall be paid seventy-nine percent by [the father] and twenty-one percent by [the mother] when due."[3] The court then ordered that the mother pay the sum of $130 per month to the father for child support.

We agree with the mother that the court's actions did not comply with the mandate of Child Support Civil Procedure Form 14, §§ 452.340.7 and 452.340.8, and Rule 88.01 as defined in *Woolridge v. Woolridge.* The court did not adopt either party's Form 14, nor did it supply one of its own. Thus, it failed to find a presumed correct child support amount. On remand, the trial court is instructed to find a presumed correct child support amount by adopting a Form 14 provided by the parties, creating a Form 14 of its own, or "articulating on the record how it calculated its Form 14 amount." *Woolridge,* 915 S.W.2d at 382. Then, the court may rebut the presumed correct child support amount as unjust or inappropriate, and order an amount pursuant to its discretion.[4]

■ In her third point on appeal, the wife argues that the trial court abused its discretion in failing to award her maintenance, contending that she lacks sufficient property to provide for her reasonable needs. She maintains that she lacks sufficient resources to provide for the bare necessities of life. The wife claims that her education, employment and earning history demonstrate that she cannot meet her needs or pay the debt assigned to her by the trial court's judgment. She argues that the husband has disposable income that he could contribute to her support.

■ In *Hosack v. Hosack,* this court reviewed § 452.335, RSMo 1994, which governs the award of maintenance, and "provides the two-part 'threshold test' for an award of maintenance." 973 S.W.2d 863, 870 (Mo.App.1998). Section 452.335.1 states that:

In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

"To proceed under the statute, the court must first determine the reasonable needs of the spouse seeking maintenance, ... then determine whether the spouse is able to provide for these needs through use of property or appropriate employment." *Hosack,* 973 S.W.2d at 870.

The wife contends that even working full-time, and earning the income imputed to her by the trial court, she could not provide herself with a bare subsistence, let alone the standard established during the marriage. Specifically, she claims that the $899 income imputed to her per month, minus $225 withholding taxes, minus $130 for child support, and minus $400 in rent,

---

**3.** The court also found that with regard to any deductible or unreimbursed medical or dental expenses, the child support amount is also "unjust and inappropriate," and ordered the same percentages by paid by the parties.

**4.** Note that "to properly frame the factual and legal issues for appeal so as to avoid needless reversals and remands, we would strongly suggest that where the trial court does 'rebut' the presumed correct child support amount, it consider including in its findings why it found the amount to be unjust or inappropriate." *Woolridge,*915 S.W.2d at 382.

leaves her with $144 per month to pay for food, utilities, transportation, medical insurance/care, and other expenses. In contrast, she argues that the husband earns $3330 per month, and has very few expenses. After paying his expenses of $1920, she contends that he has $1281 left per month in disposable income. As such, she claims that the trial court abused its discretion in failing to award her maintenance.

In response, the husband contends that the wife's imputed income, minus "less questioned monthly expenses" provides her with sufficient income to support herself. He contends that the wife was awarded the parties' only income-producing asset, the wholesale bakery business, and that her claim to the trial court that her salary is only $400 per month was not credible. Moreover, he claims she may be paid a full-time salary at her wholesale bakery business if she chooses. He claims that the trial court awarded her 70 per cent of the marital property, while burdening him will all the marital debt except that debt related to her business. He argues that his disposable income is actually $400 per month, which he must use to pay off martial debt and support the child, thus, the court properly ordered that neither party be awarded maintenance.

■ We note that the trial court made no finding as to maintenance, ruling only that neither party shall pay maintenance to the other party, and that such order is "non-modifiable." Since the court did not make a specific finding as to maintenance, we do not know its reasons for its denial of maintenance and, therefore, are hampered in our review of the issue. *Hosack,* 973 S.W.2d at 872. We agree that "[i]t is a far better practice, and one which should be followed on remand, to expressly rule on a request for maintenance." *Id.* Although trial courts have broad discretion in ordering maintenance and dividing marital property, *Allen v. Allen,* 961 S.W.2d 891, 893 (Mo.App.1998), a cursory review of the record leaves us questioning whether the

award, or lack thereof, is so "heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Id.* (quoting *Dodson v. Dodson,* 904 S.W.2d 3, 6 (Mo.App.1995)). In light of our remand for the purposes set forth *supra,* we also direct the trial court to reconsider the issue of maintenance, and issue specific findings related to the threshold test under § 452.355.1. *See Hosack,* 973 S.W.2d at 872.

■ Finally, the wife claims that the trial court should have awarded her more than $1000 in attorney fees. In support of this argument, she points to her inability to pay the fees, the husband's greater earning capacity and disposable income, the course of the case, and the high cost ($5600) of the fees she incurred. The husband argues that the trial court did not abuse its discretion in that the trial court must determine the reasonableness of the fees, the relative earning power of the parties, and the reasons they were incurred.

■ After considering all relevant factors including the financial resources of both parties, a trial court may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding regarding a divorce or a motion to modify a divorce decree. § 452.355.1, RSMo 1994. The trial court has broad discretion in making awards of attorney fees in dissolution and related proceedings. *Patton v. Patton,* 973 S.W.2d 139, 148 (Mo.App.1998). "This court will not overturn an award of fees unless the party challenging the award can demonstrate an abuse of discretion on the part of the trial court, *i.e.* that the award was against the logic of the circumstances and that it is so arbitrary and unreasonable so as to shock one's sense of justice." *Id.* (quoting *Ansevics v. Cashaw,* 881 S.W.2d 247, 250 (Mo.App.1994)).

■ The trial court's ruling with respect to the distribution of attorney fees is presumptively correct. *Cohn v. Cohn,* 841

S.W.2d 782, 787 (Mo.App.1992). The wife has not sustained her burden of establishing that the trial court's ruling was so arbitrary and unreasonable so as to shock one's sense of justice. Point denied.

We remand the matter to the trial court for specific findings as to: (1) whether domestic violence was an issue that was considered by the court in connection with its custody determination, pursuant to § 452.375.12; (2) the presumed correct child support amount, pursuant to the holding in *Woolridge v. Woolridge,* and Child Support Civil Procedure Form 14, §§ 452.340.7 and 452.340.8, and Rule 88.01; and (3) the application of the threshold test, as to the issue of maintenance, under § 452.355.1.

SMART, P.J., and LAURA DENVIR STITH, J., concur.