In re the MARRIAGE OF Ruby Elizabeth WALLS, Petitioner–Respondent,

and

Charles Everett Walls,
Respondent–Appellant.

No. 14782.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 13, 1988.

No appearance for petitioner-respondent.

Ronald J. Fuller, Rolla, for respondent-appellant.

HOGAN, Judge.

In this proceeding for a dissolution of marriage, respondent (to whom we shall refer as the defendant) appeals from the provisions of the decree awarding principal custody of the parties' children to their mother (to whom we shall refer as the plaintiff). As we understand the record, the only issue litigated in the trial court was the custody of the children.

The parties to the action were married January 29, 1978 and were finally separated on or about September 28, 1985. They became the parents of a female child born February 7, 1980 and a male child born April 21, 1982. The trial court awarded principal custody of the children to their mother. Defendant was granted custody on the first and third weekends of each month. "Weekend" was defined as the period beginning at 5:00 p.m. on Friday and ending at 5:00 p.m. on Sunday; further, the first weekend of each month was defined as the weekend following the first Friday in that month. Defendant was awarded custody of his children for one month during the summer school vacation. The court further ordered that the one-month summer period should commence not later than one week after recess for summer vacation and should end not later than one week before classes commence in the fall. Plaintiff has the right of visitation on the second weekend of the month during the summer when the defendant has the children, and a "month" is defined as 31 days, interrupted only by plaintiff's visitation with her children. The defendant is required to give plaintiff 60 days' written notice of the month in the summer during which he desires to have custody of the children.

■ The defendant has briefed and argued six repetitious assignments of error. With deference to able counsel, we do not now review the decree "de novo", if we ever properly did so, *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976) and as a general principle, it may be said that we do not disturb a trial court's award of custody unless it is manifestly erroneous and the welfare of the children appears to require a different disposition. *Wells v. Wells*, 623 S.W.2d 19, 22 (Mo.App.1981); *In re Marriage of Powers*, 527 S.W.2d 949, 952 (Mo.App.1975). We do not find the award of custody to be manifestly erroneous, nor does it appear that the welfare of the children requires a different award of custody. Nevertheless, because the custody of small children is involved, we have read the record and have considered the

assignments of error made by the appellant.

By way of general background, it may be said that the parties appear to be fairly young people; defendant testified that he was 30 years of age at trial time. Prior to their separation, the parties lived in Rolla. Plaintiff was the manager of her mother's restaurant, operated under the name "Chub and Jo's Restaurant." Defendant was the owner and operator of a bakery and cafe in St. James, a short distance northeast of Rolla. During the marriage, the children were cared for by baby-sitters while the parties were at work. When the parties separated, it was agreed they would share custody of the children. The plaintiff remained in the marital home at Rolla. The defendant moved to St. James, where he lived at trial time.

We find no evidence which compels the conclusion that either party is a wholly unsuitable custodian of the children. The defendant conceded that up to the time the parties separated, plaintiff had "taken good care of the kids." Other witnesses who appear to be entirely credible testified that the plaintiff kept a clean and orderly home and took proper care of her children.

There was also evidence that the defendant was an affectionate parent even though he had a bad temper and used extremely coarse and abusive language. The defendant testified that he prepared meals for his children while they were in his custody; he also took them to the local library, and in general carefully discharged his duties as their parent. Defendant had the testimony of credible witnesses to the effect that he took an active interest in his daughter's education and in general, demonstrated a great deal of affection toward both children, which they reciprocated.

While they were married, the parties apparently spent a good deal of their time fighting. The plaintiff testified that the defendant struck or kicked her on numerous occasions, and called her a "fuckin' slut" and a whore. She also testified that on occasion, the defendant physically abused his children. Plaintiff's version of the facts, which the trial court was free to

accept, was that she left the defendant because the defendant had told her he would eventually "... just tell your mother you're sick and I'll tie you up in the basement and just kill you a little each day." It appears that the trial court believed the plaintiff's testimony. It found as facts that: 1) the defendant had physically and verbally abused the plaintiff in private and in public and had made numerous threatening and abusive telephone calls to the plaintiff at home and at her place of employment, and 2) that reasonable (i.e., non-specific) periods of visitation by the defendant would be injurious to the minor children because of the violent and abusive relationship between the plaintiff and defendant, which was "mainly attributable to the defendant."

▮▮▮ Two of the defendant's assignments of error—points five and six—assume that the defendant was denied reasonable association with his children. The premise of those two points is simply not borne out by the record. The principle upon which our courts have operated is that when both parents are fit custodians, a child's best interest is usually served by a wholesome association with both parents. *In re Marriage of Bradford,* 557 S.W.2d 720, 725 (Mo.App.1977); *Asbell v. Asbell,* 430 S.W.2d 436, 438[6] (Mo.App.1968). The trial court has made its decree specific in order, we suppose, to avoid a continuous quarrel between the parents concerning the rights of visitation which were granted, but the defendant has not been denied a reasonable and wholesome association with his children.

▮▮▮ The defendant advances much the same argument by his point one, the general tenor of which is that the trial court erroneously considered evidence of the defendant's bad temper and abusive conduct in awarding custody of the children. The defendant contends such evidence is irrelevant, because the evidence of a violent and abusive relationship between the parties was not evidence of the parties' conduct in the presence of their children and was not part of any interaction or interrelationship between the children and either parent.

We cannot agree. Long ago in *Meredith v. Krauthoff,* 191 Mo.App. 149, 170, 177 S.W. 1112, 1120 (1915), our colleagues at Kansas City held that:

"... in determining where the custody of a child shall go, the acts and attitude of the parents toward each other, the causes leading to the divorce, their treatment of each other, and similar matters, are all material and admissible in evidence as bearing upon the question of the fitness of the respective parents to have the custody of their child."

See also *McDowell v. McDowell,* 670 S.W.2d 518 (Mo.App.1984), wherein it was held that a parent's mood disorders manifested by irritability, anger and irrational behavior militated against an award of custody to that parent. In looking to the best interest of a child, our courts have on many occasions held that no single consideration is more important than the home environment in which the child will live. In *Interest of J.L.H.,* 647 S.W.2d 852, 859 (Mo.App. 1983); *Rogers v. Rogers,* 430 S.W.2d 305, 311 (Mo.App.1968). Certainly a parent's comportment and behavior during the marriage is some indication of the stability of the home environment he will provide. The authorities cited by the defendant do not hold to the contrary. This point has no merit.

In his point three, defendant argues that the plaintiff has subjected her children to association with persons who may, by example, exert an unwholesome influence on the children. The substance of this assignment of error is that the plaintiff occasionally associates with men who are, according to the defendant, admittedly homosexual. The point is considerably over-stated. There is evidence that the plaintiff knows and occasionally associates with men who may be homosexual. We find no record evidence which would compel the inference that the plaintiff has, or is intentionally associated with any homosexual man. The trial court did not award custody of the children to a homosexual mother; the considerations which prompted this court's decision in *L. v. D.,* 630 S.W.2d 240 (Mo.App.1982) are simply not applicable in this case.

The defendant's other points are repetitive, and share the same weakness: the defendant is asking us to substitute our judgment for that of the trial court. To reiterate what we have already said, we do not disturb an award of custody in a dissolution proceeding unless there has been an abuse of discretion or unless we are convinced that the welfare of the child or children requires some disposition other than that made by the trial court. *In re Marriage of L___ M___,* 541 S.W.2d 760, 761 (Mo.App.1976). We cannot confidently say in this case that the trial court abused its discretion or that the welfare of the children requires a different award of custody. Accordingly, the judgment is affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.