Douglas Alan STANGELAND, Respondent–Appellant,

v.

Tammy Lynn STANGELAND, Appellant–Respondent.

Nos. WD 57163, WD 57195.

Missouri Court of Appeals, Western District.

Dec. 19, 2000.

Christopher Hoberock, Nevada, MO, for Respondent-Appellant.

David V. Collignon, Ozark, for Appellant-Respondent.

Belinda S. Elliston, Lamar, Guardian ad litem.

Before EDWIN H. SMITH, P.J., and ULRICH and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Tammy Lynn Stangeland appeals the judgment of the Circuit Court of Vernon County dissolving her marriage to the respondent, Douglas Alan Stangeland, with respect to the court's awards of maintenance and child custody.

The appellant raises two points on appeal. In Point I, she claims that the trial court erred in awarding her maintenance of only $100 per month because the amount of the award was not supported by substantial evidence, and in making such an award, the court misapplied the law. In Point II, she claims that the trial court erred in awarding sole legal and physical custody of the parties' minor child to the respondent because the findings on which the court based its award were not supported by substantial evidence and were against the weight of the evidence, and in making its award, the trial court erroneously applied the law.

We affirm.

## Facts

The parties were married on July 26, 1986. Less than two years later, the parties started a business that eventually became known as Stangeland Vending and Discount Cigarette Company. The parties had one child during their marriage, Derek Alan Stangeland, born October 21, 1993.

On March 25, 1998, the respondent filed his petition for dissolution of marriage alleging that the marriage was irretrievably broken. In his petition, the respondent requested the court to, *inter alia*, dissolve the marriage; award him custody of the minor child and child support; and divide the parties' property. On April 3, 1998, the respondent filed and the court granted a motion for temporary custody of Derek and restrained the appellant from entering the parties' marital home or business. On that same day, the appellant filed a petition for an order of protection against the respondent. On April 9, 1998, the appellant filed her answer to the respondent's petition and her counter-petition for dissolution. The respondent filed his answer to the appellant's counter-petition on April 27, 1998.

On April 16, 1998, the court entered an order granting temporary joint legal and physical custody of Derek to the parties and establishing a schedule of physical custody. On May 22, 1998, the court appointed Carol Spillars as trustee to oversee and manage the financial affairs of the parties' business. Thereafter, neither party was allowed access to the receipts, cash, or inventory of the business. On July 7, 1998, an application for appointment of a guardian *ad litem* for the minor child was filed. The court appointed a guardian *ad litem* on July 16, 1998.

The parties' case went to trial on January 25, 1999, and concluded on January 29, 1999. The trial court entered its judgment on February 10, 1999, *inter alia*, dissolving the marriage; dividing the property, including awarding to the respondent both the business and the marital home, and

ordering him to pay the debts thereon; awarding sole legal and physical custody of the minor child to the respondent, with supervised visitation to the appellant; and ordering the respondent to pay non-modifiable maintenance of $1,000 per month for 60 months. In addition, the respondent was ordered to pay the trustee fees of $25,000 within two years, his own attorney's fees, $5,000 of the appellant's attorney's fees, and $2,500 of the guardian *ad litem's* fees. The judgment was amended *nunc pro tunc* on March 4, 1999, changing the appellant's visitation from supervised to unsupervised.

On March 11, 1999, the appellant filed her "Motion for New Trial, or, In the Alternative, to Vacate and Amend the Judgment and Decree of Dissolution." The court heard the motion on April 12, 1999. On April 20, 1999, the trial court sustained the motion and amended its judgment, awarding the appellant modifiable maintenance of $100 per month for 60 months and ordering the respondent to pay the appellant $1,000 per month for 60 months to equalize the court's property division.

On April 30, 1999, the appellant filed a premature notice of appeal. Likewise, on May 11, 1999, the respondent filed a premature notice of cross-appeal, which he later dismissed. After the trial court's judgment was further amended *nunc pro tunc* on May 4, 1999, to correct a clerical error, the respondent filed a "Motion to Further Amend Judgment Entry" on May 6, 1999. In his motion, the respondent alleged that the trial court was required, but failed, to make findings in its judgment as to the child custody factors of § 452.375.2. The motion was heard on June 3, 1999, and on June 28, 1999, the trial court entered its third amended judgment, which included the required statutory findings as to its award of custody.

This appeal follows pursuant to Rule

81.05(b)[1] governing a premature filing of an appeal.

## I.

In Point I, the appellant claims that the trial court erred in awarding her maintenance of only $100 per month because the amount of the award was not supported by substantial evidence, and in making such an award, the court misapplied the law.[2] Specifically, she contends that the amount of the trial court's award was unreasonable and an abuse of discretion when the mandatory factors of § 452.335.2(1)-(10)[3] are applied to the evidence in this case. We disagree.

Provisions in a divorce decree will be affirmed unless there is no substantial evidence to support them, they are against the weight of the evidence, or the trial court erroneously declares or applies the law. *Woolridge v. Woolridge*, 915 S.W.2d 372, 375 (Mo.App.1996) (*citing Hoffmann v. Hoffmann*, 676 S.W.2d 817, 818[4] (Mo. *banc* 1984); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. *banc* 1976)). As to an award of maintenance, the trial court is granted broad discretion. *Keller v. Keller*, 18 S.W.3d 589, 593 (Mo.App.2000) (*citing Allen v. Allen*, 961 S.W.2d 891, 893 (Mo. App.1998)). If reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that it abused its discretion. *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 881 (Mo. *banc* 1993). An abuse of discretion as to an award of maintenance will only be found where the award is such that it shocks the appellate court's sense of justice. *Coble v. Coble*, 931 S.W.2d 206, 210 (Mo.App.1996). In determining whether the trial court abused its discretion in awarding maintenance, we are to review the evidence "in a light favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Keller*, 18 S.W.3d at 593 (citations omitted).

Section 452.335 governs the award of maintenance and provides a two-step threshold test for determining the propriety of such an award. It reads, in pertinent part:

In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

§ 452.335.1. In our case, there is no dispute on appeal as to the appellant's entitlement to maintenance under the statutory test of § 452.335.1. The dispute concerns only the amount of the award, $100 per

---

1. All rule references are to the Missouri Rules of Civil Procedure (1999), unless otherwise indicated.

2. We note that, in the argument portion of her brief, the appellant also asserts that the award of maintenance was against the weight of the evidence; however, this contention was not encompassed within her point relied on. Appellate courts are obliged to decide only those issues raised in the points relied on. *In re Marriage of Thomas*, 21 S.W.3d 168, 173 n. 5 (Mo.App.2000). Issues to which an appel-

lant alludes only in the argument portion of her brief are considered abandoned and not preserved for review. *Id.*

3. All statutory references are to RSMo 1994, unless otherwise indicated.

4. Although *Woolridge* cites to page 818 of *Hoffmann*, the material to be cited is found on page 822. Thus, the proper citation is *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 822 (Mo. *banc* 1984).

month, which the appellant claims is unreasonable.

■ The threshold test of § 452.335.1 having been met for an award of maintenance to the appellant, the trial court, in determining the amount and duration of its award, was required to consider the nonexclusive list of factors set forth in § 452.335.2. *Hosack v. Hosack,* 973 S.W.2d 863, 872 (Mo.App.1998). As to those factors, § 452.335.2 provides:

The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ...;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

"A trial court has broad discretion in applying factors on which the amount of maintenance is based." *Shook v. Shook,* 997 S.W.2d 103, 106 (Mo.App.1999). "The court is not required to address each of these factors in determining the amount and duration of maintenance that [was] appropriate." *Hosack,* 973 S.W.2d at 872 (citations omitted). Rather, it is required to consider and apply the factors so as to balance the reasonable needs of the spouse seeking maintenance against the ability of the other spouse to pay. *Id.* In doing so, the trial court is not required to announce for the record the significance of and the weight that it gave to each factor in determining its award of maintenance. *Monsees v. Monsees,* 908 S.W.2d 812, 818 (Mo. App.1995) (*quoting McCallister v. McCallister,* 809 S.W.2d 423, 429 (Mo.App.1991)).

The trial court did not make any findings for the record as to the appellant's income and expenses that it found in determining the amount of its maintenance award to the appellant. Further, the record reflects that neither party made any request for findings of fact and conclusions of law pursuant to Rule 73.01(a). Hence, we must consider the fact issues presented as being found by the court in accordance with its award of maintenance. *Id.*

In claiming on appeal that the trial court abused its discretion in awarding her maintenance of only $100 per month, the appellant contends that the evidence, when viewed in a light most favorable to the court's judgment and after considering the factors of § 452.335.2, supported a finding that her reasonable expenses exceeded her monthly income by at least $1,248 to $1,548, depending on the monthly income figure used for her, and that the respondent had the ability to pay an amount within that range. Her claim is without merit.

In support of her request for maintenance at trial, the appellant introduced her income and expense statement reflecting gross wages or salary of $3,000 and total expenses of $2,965. As to her expenses, she admits on appeal that the $417 listed as expenses for the minor child, of whom she did not receive custody, has to be deducted, reducing her claimed monthly expenses to $2,548. As to the $3,000 in

wages and salary listed in the appellant's statement, both the appellant and the respondent testified at trial that the inclusion of that amount was contingent on the appellant's receiving the parties' business in the court's division of marital property, which did not occur. As such, the appellant contends that the only evidence of her monthly income, for the purpose of determining an award of maintenance to her, would have been her testimony that she was capable of netting $1,000 per month in income, and the respondent's testimony imputing income to her of $7.50 an hour or $1,300 per month. She does not challenge on appeal the propriety of an imputation of income, but instead argues that even if the trial court did impute to her $1,300 per month in income, as argued for by the respondent, the greater weight of the evidence indicated that her reasonable expenses or needs still exceeded her income by at least $1,000, rendering the trial court's maintenance award to her of $100 per month unreasonable.

In contending that the trial court did not abuse its discretion in awarding the appellant $100 a month in maintenance, the respondent argues that the evidence, when viewed in a light most favorable to the trial court's judgment, reflects that the appellant overstated her reasonable expenses and understated her income. He further argues that in any event, the trial court could have reasonably found from the evidence that he did not have the ability to pay any more than $100 per month in maintenance.

As to overstating her expenses, the respondent points to evidence in the record indicating that the appellant's claimed monthly expenses for electricity and telephone service, $450, were substantially inflated and unreasonable. The respondent also points to evidence that the $400 monthly expense listed by the appellant for payment of installment contracts, credit card debt, was short term in nature and as such, not properly included as a monthly expense for the purpose of determining an award of maintenance. As to understating her monthly income, the respondent argues that in addition to imputing income to the appellant of $1,300 per month, the trial court was free to consider as income the $1,000 monthly payments he was ordered to pay her to equalize the court's property division. As to the $1,000 payment, we recognize, as the appellant asserts, that generally a spouse is not required to exhaust the property awarded to him or her in the dissolution to meet his or her reasonable needs. *Witt v. Witt*, 930 S.W.2d 500, 503 (Mo.App.1996).

With respect to his ability to pay maintenance, the respondent points to the record favorable to the trial court's award indicating that he could reasonably anticipate $3,000 a month in income from the family business awarded to him, which had substantial debt. From this amount, the record further indicates that he was required to pay his monthly expenses and the child's, which he listed in his income and expense statement at $3,300. In addition, as noted, *supra*, he was ordered to pay the appellant $1,000 per month to equalize the court's property division. He was also required to pay the fees of the court-appointed trustee, the guardian *ad litem*, and the appellant's attorneys, totaling $28,000. The respondent contends that, given his income and expenses, he did not have the ability to pay any more than the $100 ordered.

The appellant's claim of error as to the trial court's award of maintenance is based almost entirely on her belief that the court was required to accept her uncontroverted evidence offered in support of her assertions as to her monthly income and expenses, which reflected a greater need for maintenance than $100 per month. However, this ignores the fact that the trial court was free to believe or disbelieve all or any portion of her evidence. *Crews v. Crews*, 949 S.W.2d 659, 665 (Mo.App.1997). Further, her position ignores the fact that, if believed, the respondent's evidence would have established that her expenses

were inflated. More importantly, however, her position ignores the fact that, even if the trial court accepted her figures as to her income and expenses, there was ample evidence presented by the respondent from which the trial court could have found that he did not have the means to pay any more than $100 per month in maintenance. Thus, we find, when viewed in a light most favorable to the trial court's judgment, that the record supports the court's awarding maintenance to the appellant of $100 per month and thus, it did not abuse its discretion in awarding the same.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in awarding sole legal and physical custody of the parties' minor child to the respondent because the findings on which it based its award were not supported by substantial evidence and were against the weight of the evidence; and in making its award, the trial court erroneously applied the law. We disagree.

As noted, *supra,* provisions in a divorce decree will be affirmed unless there is no substantial evidence to support them, they are against the weight of the evidence, or the trial court erroneously declares or applies the law. *Woolridge,* 915 S.W.2d at 375 (citations omitted). As to an award of child custody, the trial court has broad discretion, and its "decision will be affirmed unless the appellate court is firmly convinced that the welfare of the child[ ] requires a different disposition." *Hennessey v. Smith-Hennessey,* 997 S.W.2d 538, 542 (Mo.App.1999) (citation omitted). "In reviewing an award of custody, we are to presume that all evidence was considered by the trial court." *Id.* (citations omitted). Further, we review the evidence in the light most favorable to the trial court's judgment. *Brandow v. Brandow,* 18 S.W.3d 584, 587 (Mo. App.2000) (citation omitted).

We would first note that, in contravention of Rule 84.04(d)(5), the appellant's argument is devoid of any citations to authority other than those cited for our standard of review. Strictly speaking, non-compliance with the dictates of Rule 84.04 preserves nothing for appellate review. *Coyne v. Coyne,* 17 S.W.3d 904, 906 (Mo.App.2000). However, because "[a]ppellate courts are more tolerant regarding technical requirements [of Rule 84.04] when the questions presented relate to the welfare of children," *Rinehart v. Rinehart,* 877 S.W.2d 205, 206 (Mo.App. 1994) (citation omitted), we will review the issues presented on their merits, provided "the argument is sufficient in conjunction with the points relied on to ascertain the issues being raised." *Landry v. Miller,* 998 S.W.2d 837, 841 (Mo.App.1999), *abrogated on other grounds by In re McIntire,* 33 S.W.3d 565, 567 (Mo.App. 2000). After a review of the appellant's point relied on and argument, we find that we are able to discern her claim of error therefrom, and will review the same *ex gratia. Mann v. City of Pacific,* 860 S.W.2d 12, 15 (Mo.App. 1993).

Section 452.375.2 [5] requires the trial court to "determine custody in accordance with the best interests of the child." In doing so, the court is to:

... consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

---

**5.** All statutory references to § 452.375 are to RSMo Supp.1998.

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

*Id.* Where, as here, the parties do not agree to a custodial arrangement, § 452.375.6 requires the trial court to:

[I]nclude a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child.

Accordingly, the trial court here made findings detailing the relevant factors it relied upon in making its award of custody to the respondent. It is these findings which the appellant asserts are not supported by substantial evidence and are against the weight of the evidence.

The appellant first attacks the trial court's findings with respect to factors (1) and (4), primarily the latter. As to factor (1), the court found, in pertinent part: "The parenting plan as presented by [the respondent] is ... in the best interest of the minor child, except for the fact that there is not sufficient evidence to support an order of supervised visits for [the appellant]." As to factor (4), the trial court found:

Both parents have indicated a willingness to allow the child frequent, continuing and meaningful contact with the other parent. [The respondent's] proposed Parenting Plan does include more opportunity for contact. [Appellant's] actions have indicated an unwillingness on her part to be flexible and willing to work through differences concerning visits and the child's needs.

In attacking the trial court's findings with respect to factors (1) and (4), the appellant contends that the record does not support the court's finding that the respondent's plan, excluding supervised visitation, was in the best interests of the child in that the plan ordered by the court as to the visitation allowed to the non-custodial parent was closer to hers, not the respondent's, which would impliedly contradict its finding that his plan provided more opportunity for meaningful contact with the child. Further, as to providing meaningful contact, the appellant contends that the record does not support a finding that her actions indicated an unwillingness to work with the respondent to provide such contact with the child in that by rejecting the need for supervised visitation by the appellant, the court necessarily found that she would be cooperative in matters of visitation. Our review indicates that the trial court's findings as to factors (1) and (4) are amply supported by the record.

The proposed parenting plan submitted by the respondent provided for visitation by the appellant as follows:

1. *Weekend Visitation:* Saturday and Sunday on alternate weekends.

2. *Holidays:* Alternate major holidays of Christmas Eve from noon until 9:00 p.m.; Christmas Day, Thanksgiving, Easter, Fourth of July, Labor Day and Memorial Day.

3. *Birthdays:* Alternate birthdays of the child;

4. *Father's Day and Mother's Day:* Father's Day shall be with Father, Mother's Day shall be with Mother; and

5. *Summers:* Two two-week periods during the summer school vacation which periods will be separated by a hiatus of at least two weeks.

f. All visitation shall be supervised by a supervisor of Father's choice, and all expenses of the supervision shall be paid by Father. No visitation shall be an overnight visit. All visitation shall be for four (4) hours per visitation day to facilitate the supervision; time of day to be arranged by the parties.

The respondent's plan provided for 85 days of visitation per year. In contrast, the parenting plan proposed by the appellant provided for only 42 days of visitation by the respondent as follows:

a. One weekend per month beginning at 6:00 P.M. on Friday until 8:00 P.M. on Sunday....

b. Two (2) weeks each summer to coincide with the child's school summer vacation.

c. Holidays and Special Days as follows:

. . .

ii. [Appellant] shall have custody of the minor child on her birthday and on Mother's Day each year from 9:00 A.M. to 9:00 P.M.;

iii. [Respondent] shall have custody of the minor child on his birthday and on Father's Day each year from 9:00 A.M. to 9:00 P.M.;

iv. [Respondent] shall have custody of the minor child each year on THANKSGIVING DAY from 4:00 P.M. until 8:00 P.M. and each year on CHRISTMAS DAY from 2:00 P.M. until 8:00 P.M.

A comparison of the plans would support the court's finding that the respondent's parenting plan was in the best interests of the child because it provided more opportunity for meaningful contact with the appellant.

As to the appellant's contention that the plan adopted by the trial court was, in fact, closer to her proposed plan than the respondent's, a comparison of the parties' plans with the court's indicates otherwise. The court's plan provides:

a. *Weekend Visitation:* Alternate weekends from Friday at 6:00 pm to Sunday at 6:00 pm.

b. *Holidays:* Alternate major holidays of Christmas Eve from noon until 9:00 p.m.; Christmas Day, Thanksgiving, Easter, Fourth of July, Labor Day and Memorial Day.

c. *Birthdays:* Alternate birthdays of the child;

d. *Father's Day and Mother's Day:* Father's Day shall be with Father, Mother's Day shall be with Mother; and

e. *Summers:* Two two-week periods during the summer school vacation which periods will be separated by a hiatus of at least two weeks.

The court's plan is almost identical to paragraphs 1–5 of the respondent's in that it provides for 85 days of visitation a year. Simply because the trial court ultimately found that the provision in the respondent's plan for supervised visitation by the appellant was unnecessary did not, as the appellant contends, reflect the fact that the court, despite its best interests finding, had actually rejected the respondent's plan.

As to the trial court's finding as to the appellant's unwillingness to be flexible on matters of visitation to promote meaningful contact by the non-custodial parent with the minor child, we find ample support in the record for the same. The record reflects that the respondent's parenting plan provided that both parents would share in making decisions concerning, but not limited to:

(1) Choice or change of school;

(2) College;

(3) Camp or other comparable summer activity;

(4) Special tutoring;

(5) Music, art, dance and other cultural lessons;

(6) Psychological or psychiatric treatment or counseling;

(7) Doctors and surgeons; and

(8) All other material decisions affecting the health, education and welfare of the child.

The appellant's plan, on the other hand, provided that:

[she] shall make all final major decisions relating to the minor child's growth, development, health, education and welfare; including, but not limited to the choice or change of religious upbringing; the choice or change of child care provider; the choice of school or college; a course of study; special tutoring; extent of travel away from home; the choice of camp or other comparable summer activity; the choice or change of health care providers; non-emergency medical or dental treatment; psychotherapy; psychological treatment, counseling or testing; part or full-time employment; purchase or operation of a motor vehicle; especially hazardous sports or activities; extra-curricular activities, including but not limited to, music, art, dance and other cultural lessons or activities and gymnastics or other athletic activities; contraception and sex education; and decisions relating to actual or potential litigation involving the minor child, directly or as a beneficiary (other than custody).

In this regard, the appellant affirmed in her testimony her belief that she should be able to make all final decisions for the minor child without consulting the respondent. She also testified that she would be unwilling to allow anyone but the respondent to pick up the child for visitation, except in cases of emergency. There was also evidence in the record regarding conflicts that had arisen between the parties concerning the terms of the temporary pretrial physical custody ordered by the court and the appellant's unwillingness to make any concessions with respect thereto, which evidence the trial court was free to believe and consider in determining custody. *Patton v. Patton,* 973 S.W.2d 139, 147 (Mo.App.1998).

The appellant next challenges the trial court's finding with respect to factor (3). As to this factor, the court found:

Derek appears to have a positive relationship with both parents. There was minimal evidence presented about his relationships with other persons who significantly affect his interest. [The appellant] has allowed the child to ride in a vehicle while her paramour, Charlie Crocker was driving, even though she knew he had lost his license due to recurring Driving While Intoxicated charges. Further [the appellant] has shown a lack of understanding about how her actions place the child at risk, specifically, the use of a gun, to threaten [the respondent], while the child was present.

The appellant contends that there was no evidence in the record from which the trial court could find that she knew that Crocker's driving privileges were suspended or revoked in that the respondent's evidence in that regard was excluded by the court. However, the record would reflect that during cross-examination by the guardian *ad litem,* the appellant testified:

Q. Did I understand you correctly to say that you're not aware that Charlie E. Crocker has had his license suspended?

A. I don't know the status of his personal business.

Q. Have you ever discussed with him whether he had a valid driver's license?

A. No. Not until the day Doug had told the officers to pick him up.

Q. Okay. And was Charlie, in fact, picked up for driving while suspended?

A. Yes, he was.

Q. And was Derek with him on that occasion?

A. Derek and I both.

Q. Okay. And so when that occurred, where did you all go? The police stopped you on the road?

A. Yes.

Q. And did you go down to the police station then?

A. They took Charlie. And I took Derek to my grandmother's with me.

The trial court could have reasonably inferred from the appellant's testimony that she was aware that Crocker's license had been suspended. However, there does not appear to be any evidence from which the trial court could have found that she was aware of the reason for his suspension. The significance of allowing the child to ride with an individual whose license has been suspended for an unknown reason is questionable. In any event, even if this finding were ignored, the record otherwise supports the trial court's award of custody.

The appellant next challenges the trial court's finding as to factor (5), wherein the court found:

> The child has not yet started school and because of his young age has had minimal contact with the community such that his adjustment to such can be reviewed. Both parents do live within the same school district. [The respondent] has continued to reside in the marital home of the parties; by [appellant's] choice. She moved out of the marital home and also did not request possession of the same in trial. Derek has lived in the marital home most of his life, the home is appropriate for the child. Although Derek has a room of his own with [the appellant], he sleeps in her bed between [the appellant] and her paramour.

The appellant argues that the court's emphasis on the respondent's remaining in the marital residence was not supported by the evidence because there was no testimony to show that her new residence was "inadequate or detrimental to the welfare of the child." However, such a showing is not required in order for the trial court to attach significance to the appellant's leaving the home upon separation in making a determination of custody as being in the best interests of the child. Where, as here, a child has lived in the family home for a significant period of time prior to dissolution, the award of the family home can be a relevant factor in determining custody. *Horton v. Horton*, 961 S.W.2d 67, 71 (Mo.App.1997). This is because the "family home is a familiar point of reference for a child going through an unfamiliar and disturbing period of transition." *Id.* Thus, we cannot find that the court's reliance, in part, on factor (5) in its award of custody was not supported by the evidence.

As to the appellant's claim that the trial court's attaching any significance to the child's sleeping with Crocker and her in awarding custody to the respondent was not supported by the record in that there was no evidence to show that this arrangement was detrimental to the child, we disagree. "[M]orals are a relevant consideration in deciding whose custody will serve the best interests of a child." *R.J.A. v. G.M.A.*, 969 S.W.2d 241, 244 (Mo.App. 1998). In this respect, "[c]onsideration must be given to what conduct a parent may inspire by example, or what conduct of a child a parent may foster by condonation." *Id.* As such, consideration of a parent's behavior is not strictly limited to behavior that has, in fact, adversely affected the child. *Id.* Obviously by bringing the child into the same bed to sleep where she was sleeping with a man out of wedlock, the appellant was not only condoning such immoral behavior, but was in effect promoting it. Thus, although there was no showing that the child was actually adversely affected by the sleeping arrangement in question, the trial court was free to attach some significance to the appellant's actions in this regard in determining

custody such that the record would support the trial court's finding.

■■■■■ As to one of the trial court's findings with respect to factor (6): "Derek has been exposed to at least verbal arguments between [the appellant] and her paramour. However, Derek has not been exposed to such behavior while with [the respondent]," the appellant contends that it was not supported by the record in that there was no evidentiary showing that this adversely affected the child. However, the statutory language concerning this factor indicates that domestic violence, even though not directed at the child, is always a concern when considering the best interests of the child as to an award of custody. § 452.375.2(6). Further, this same argument has previously been rejected by the appellate courts of this state, which have held that "a parent's comportment and behavior during [a relationship] is some indication of the stability of the home environment [the parent] will provide." *In re Marriage of Walls,* 743 S.W.2d 137, 140 (Mo.App.1988); *see also In re Krauthoff,* 191 Mo.App. 149, 177 S.W. 1112, 1120 (Mo. App.1915); *Interest of J.L.H.,* 647 S.W.2d 852, 859 (Mo.App.1983) (holding that no single consideration is more important than the home environment in which the child will live). Accordingly, the trial court here was free to consider how the appellant's verbal arguments with Crocker may over a period of time adversely affect Derek as well as to consider what effect living in such a home environment would have on him. *Walls,* 743 S.W.2d at 140; *R.J.A.,* 969 S.W.2d at 244.

■■■■■ Finally, the appellant attacks the trial court's finding as to factor (8), in which the court found: "The child's wishes as to his custodian have been considered." In this regard, the appellant essentially argues that although the court's finding may be correct, it is incomplete in that this factor actually supported an award of cus-

tody to her because the child expressed a desire to live with her. "While the wishes of the child regarding his custody are taken into consideration, they are not controlling, as such an important decision should not be allowed to turn upon the temporary whims or desires of a child." *In re Marriage of Haynes,* 913 S.W.2d 73, 76 (Mo. App.1995) (citation omitted). "The weight to be given such preferences varies with the age of the child and the basis for that preference." *Gambino v. Gambino,* 636 S.W.2d 81, 82 (Mo.App.1982) (citations omitted). Where, as here, the child is of tender years, five years of age at the time of the hearing, little weight should reasonably be given his preference in that it is doubtful that the child has a rational basis for a preference. *Kordonowy v. Kordonowy,* 887 S.W.2d 809, 811 (Mo.App.1994). Thus, the record as to factor (8) would not necessarily favor the appellant as she contends; and even if it did, it would be insignificant when viewed on balance with the other factors discussed that support the trial court's award of custody to the respondent.[6]

For the foregoing reasons, we find that the trial court's findings as to the factors of § 452.375.2 were supported by the record and supported the trial court's award of sole custody of the parties' minor child to the respondent.

Point denied.

### Conclusion

The judgment of the circuit court dissolving the marriage of the parties is affirmed in all respects.

ULRICH and ELLIS, JJ., concur.

---

**6.** With respect to the remaining findings of the trial court as to factors (2), (6), and (7), the appellant argues that these are neutral

such that they could not have been considered as supporting an award of custody to the respondent.