**Michael D. BAUER, Appellant,**

v.

**Diana L. BAUER, Respondent.**

**No. WD 60338.**

Missouri Court of Appeals,
Western District.

June 25, 2002.

---

ROBERT G. ULRICH, Judge.

Michael Bauer (Father) appeals from the amended judgment of dissolution entered by the trial court dissolving his marriage to Diana Bauer (Mother). This case returns to this court after it was remanded to the trial court for written findings regarding child custody as required by section 452.375.6, RSMo 2000. *Bauer v. Bauer*, 38 S.W.3d 449, 456 (Mo.App. W.D. 2001). In his sole point on appeal, Father claims that the trial court erred in awarding Mother primary physical custody of three of the parties' four minor children. The judgment of the trial court is affirmed.

## I. Factual and Procedural History

The parties were married on May 1, 1980. Four children were born of the marriage: Stacey, born October 7, 1980; Rachel, born September 6, 1985; Mikey, born May 28, 1992; and Bradley, born August 24, 1995. During the marriage, Father was self-employed in construction and property management. Although Mother occasionally worked outside of the home, she primarily acted as homemaker and caregiver of the children throughout the marriage.

From the beginning, the parties experienced problems in their marriage. Father often worked long hours, and Mother used illegal drugs periodically, mainly methamphetamines. On August 5, 1997, Father applied for and received an *ex parte* order of protection against Mother, which excluded her from the marital home. During this time, the children remained in the custody of Father. Father only allowed Mother to see the children twice from August 5, 1997, to December 27, 1997, when the trial court entered an order granting Mother supervised visitation.

Marilyn M. Shapiro, Kansas City, for Appellant.

Meryl L. Lange, Raymore, for Respondent.

Before PAUL M. SPINDEN, C.J., P.J., HAROLD L. LOWENSTEIN and ROBERT G. ULRICH, JJ.

Father filed his petition for dissolution of marriage on August 7, 1997, seeking, *inter alia,* dissolution of the marriage, sole custody of the children, and reasonable visitation of the children by Mother. Mother filed her answer and counter-petition on August 20, 1997, seeking, *inter alia,* sole custody of the children, child support from Father, and reasonable visitation of the children by Father. On July 1, 1998, a guardian ad litem (GAL) was appointed upon the parties' joint motion.

The case was originally heard by the Honorable Thomas M. Campbell in September and October, 1998. Each party presented substantial evidence concerning the misconduct of the other spouse during the marriage. The trial court also interviewed the parties' four children. At the conclusion of all of the evidence, the GAL recommended to the trial court that the parties receive joint legal and physical custody of the children. The GAL specifically recommended that Father receive physical custody of the children during the week and Mother receive physical custody on the weekends during the school year with the arrangement reversed during the summer non-school months.

On November 9, 1998, Judge Campbell declared a mistrial and recused himself from the case. After two changes of judge, the case was eventually assigned to the Honorable Joseph P. Dandurand. The parties stipulated that Judge Dandurand could decide the case solely upon the trial record in the case. After reviewing the record, the trial court entered its order on July 26, 1999, awarding the parties, *inter alia,* joint legal custody of all four children, with primary physical custody of Stacey to Father and primary physical custody of Rachel, Mikey, and Bradley to Mother with scheduled visitation to Father. During the hearing on Father's motion to amend the judgment, the GAL told the

trial court that although she had previously recommended that Father have physical custody of the children during the school year, she wholeheartedly agreed with the trial court's custody determination. Father appealed, and the judgment regarding child custody was remanded to the trial court for written findings as required by section 452.375.6, RSMo 2000. *Bauer,* 38 S.W.3d at 456. The trial court then entered its amended judgment on June 26, 2001, with the same custody determination as its prior judgment provided and the required written findings. This appeal by Father followed.

In his sole point on appeal, Father claims that the trial court erred in awarding Mother primary physical custody of three of the parties' four minor children because the award was against the weight of the evidence, not supported by substantial evidence, contrary to law, and an abuse of discretion. Specifically, Father claims that the court did not give sufficient weight to Mother's drug use, to Mother's cohabitation with a convicted felon who had been incarcerated for his crime, to the recommendation of the guardian ad litem, and to the environment that he would have provided for the minor children.

## II.  Standard of Review

■ An appellate court will affirm the custody determination of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Newsom v. Newsom,* 976 S.W.2d 33, 35 (Mo.App. W.D. 1998). An appellate court will not set aside a judgment as "against the weight of the evidence" unless it firmly believes that the judgment is wrong, or if the judgment is clearly against the logic of the circumstances or is arbitrary or unreasonable.

*Miers v. Miers,* 53 S.W.3d 592, 595 (Mo. App. W.D.2001). An appellate court will not disturb the trial court's custody determination unless it is firmly convinced that the welfare of the child requires some other disposition. *Id.* While an appellate court normally defers to the trial court's credibility determinations, *Newsom,* 976 S.W.2d at 35–36, such is not the case here where the trial court did not hear the evidence or observe the witnesses but ruled the case strictly upon the transcript, which is now before this court. *Dir. of Revenue, State of Mo. v. Christman,* 968 S.W.2d 737, 739 (Mo.App. E.D.1998); *Ashbaugh v. Sims,* 483 S.W.2d 80, 83 (Mo.App. 1972).

## III.  Applicable Statutory and Case Law

Section 452.375, RSMo 2000, governs child custody. It requires the trial court to "determine custody in accordance with the best interests of the child." § 452.375.2, RSMo 2000. In doing so, the trial court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their function as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child to the child's custodian.

§ 452.375.2, RSMo 2000.

In addition to the factors in section 452.375.2, RSMo 2000, the trial court may properly consider the character and morals of a parent in determining the custody of a child. *Stangeland v. Stangeland,* 33 S.W.3d 696, 707 (Mo.App. W.D.2000); *Newsom,* 976 S.W.2d at 39. Consideration must be given to what conduct a parent may inspire by example or what conduct of a child a parent may foster by condonation. *Stangeland,* 33 S.W.3d at 707. Thus, consideration of a parent's behavior is not strictly limited to behavior that has, in fact, adversely affected the child. *Id.* "A good environment and a stable home is generally considered as the most important single consideration in custody cases." *Newsom,* 976 S.W.2d at 39 (quoting *R. v. R.,* 685 S.W.2d 598, 602 (Mo.App. S.D. 1985)).

## IV. Analysis

### A. The trial court attributed sufficient weight to Mother's prior use of illegal drugs.

■ Father first argues on appeal that the trial court did not give sufficient weight to the drug use of Mother and that its decision to award primary physical custody of Rachel, Mikey, and Bradley to Mother was against the weight of the evidence in that Mother's character is deficient and will negatively affect the children if they reside with her. Father presented extensive evidence concerning past drug use by Mother. He testified that he believes Mother used methamphetamines or speed as early as 1982 and continued their use until 1985. Father believes that Mother began using methamphetamines again in 1986, partly to lose weight after the birth of Rachel. He further believes that Mother continued to use illegal drugs until 1992 because of her actions that included rapid speech and the practice of staying up late at night. Father testified that he found drugs in the house and a glass pipe in Mother's purse in the summer of 1997. Father also presented the testimony of Teresa Todd, Kenny Paul, Terri Paul, and Andy Parker, who all testified that they had observed Mother consume or had consumed with Mother methamphetamines at various times from 1995 to August 1997. Additionally, Ms. Paul testified that Mother admitted using methamphetamines prior to 1986.

Father also presented the testimony of his experts, Dr. Harold Brown, a psychologist specializing in substance abuse, and Dr. Michael Robertson, a forensic toxicologist who conducted an analysis of Mother's hair specimen. Dr. Brown testified that he believes Mother minimized her prior drug use and is at a high risk for relapse. Dr. Robertson testified that the test on Mother's hair sample demonstrated Mother's multiple uses of methamphetamines from two and a half to five months prior to the date the hair sample was taken in December 1997.

The uncontradicted evidence, however, revealed that at the time of trial, Mother was not using or addicted to methamphetamines. Mother admitted to using methamphetamines once in 1994 and nightly for a two-month period in 1997 when she helped Teresa Todd with a Kansas City Star paper route, but never in the presence of the children. She stated that she was wrong to use illegal drugs. She also testified that she had ceased associating with Ms. Todd and the others with whom she had used drugs and that she had not used drugs since August 1997. Both Father's and Mother's experts also testified at trial that Mother was not presently using or addicted to methamphetamines. Father's expert, Dr. Brown, testified that the results of various tests conducted on Mother indicated that she had most likely not been using addictive drugs in the previous three to four months and may have been drug-free for over a year. He further stated that Mother was not physically dependent on methamphetamines at the time of trial. Mother's expert, Preston Washington, the clinical director for the National Council on Alcoholism and Drug Dependency in Kansas City, also interviewed Mother and conducted various tests on her. He testified that he saw no signs or symptoms of drug problems in the past year, and he opined that Mother did not require drug intervention or enrollment in a substance abuse program. He also stated that he saw no evidence that Mother tried to skew the test results or that she was less than honest about the level of her past illegal drug use.

Additionally, Ms. Todd and Ms. Paul both testified that when Mother had used illegal drugs, she had provided good care

to her children, despite her drug use, and that she had not used drugs in the children's presence. Finally, the oldest child, Stacey, who was 17 years old at the time of trial, told the trial court that she had observed people manifesting the use of drugs before and that she had never noticed Mother acting as if she were using drugs.

The trial court made the following findings regarding Mother's prior drug use:

> The court further finds that while the evidence indicates that [Mother] had used methamphetamines during the marriage, her use of said illegal drugs did not negatively impact her ability to care for the children and that, in fact, she had been the primary caretaker for the children during the marriage and the children thrived under her care. The evidence further was that she was not using drugs at the time of the hearing and had been free of drug use for a substantial period of time prior to trial. The award of joint legal and physical custody of the children with the parenting time as set out in the Parenting Plan is in the best interests of the children.

These findings were not against the weight of the evidence and were supported by substantial evidence.

**B. Mother's prior cohabitation with boyfriend does not require finding that the trial court's custody award was against the weight of the evidence.**

█ Father next argues that the court did not give sufficient weight to the fact that Mother was cohabitating with a convicted felon who had been incarcerated for his crime. The evidence revealed that Mother began cohabiting with her boyfriend, David McKnight, at his parent's home in August 1997 shortly after she was removed from her home by the *ex parte* order of protection granted to Father. Mr. McKnight also lived with Mother in the marital home after she was allowed to move back on December 24, 1997. The evidence further revealed that Mr. McKnight had been convicted of receiving stolen property, for which he served three years in prison, but that he has no recent conflict with the law. The children, however, had limited contact with Mr. McKnight from August 1997 until the trial, and no evidence was presented that Mother's living arrangement during that time adversely affected the children. Mother did not have any overnight visits with the children until after she moved back into the marital home in December 1997. In fact, Father only allowed Mother to see the children twice between August 5, 1997, and December 24, 1997. After Mother moved back in to the marital home and was granted visitation, the children stayed overnight with her two nights per month. The evidence showed that Mr. McKnight moved out of the marital home a week before trial. Mother explained that when faced with the possibility of receiving custody of the children or at least more substantial visitation rights, she decided that her children's' best interests required Mr. McKnight to move from the marital residence. Finally, Mother testified that Mr. McKnight had done nothing to harm the children, that the children liked Mr. McKnight very much, and that they inquired about him after he moved from the family residence. The evidence supports the conclusion that Mother is not cohabitating with her boyfriend and her prior cohabitation with Mr. McKnight did not demonstrate that the trial court's custody award was against the weight of the evidence.

**C. The trial court's custody award contravening guardian ad litem's recommendation does not warrant reversal.**

█ Father next argues that the trial court did not give sufficient weight to

the recommendation of the guardian ad litem. The trial court must determine child custody in accordance with the best interests of the child, and relevant factors the court must consider are identified in section 452.375.2, RSMo 2000. The GAL submits her recommendation, but the court exercises its considerable discretion, in accordance with applicable law, when determining the best interests of the child. *Young v. Young,* 59 S.W.3d 23, 28 (Mo. App. W.D.2001). Thus, the trial court is not bound by the opinion or recommendation of the GAL and may accept, modify, or reject the guardian's recommendations as necessary. *Portwood–Hurt v. Hurt,* 988 S.W.2d 613, 619 (Mo.App. W.D.1999); *Weiss v. Weiss,* 954 S.W.2d 456, 460 (Mo. App. E.D.1997).

At the conclusion of all of the evidence, the GAL made a recommendation to the trial court that the parties receive joint legal and physical custody of the children. The GAL specifically recommended that Father receive physical custody of the children during the week and Mother receive physical custody on the weekends during the school year with the arrangement reversed in the summer. Nothing in the record indicated that the trial court did not consider the GAL's custody recommendation regarding primary physical custody. Rather, the trial court simply declined to follow the recommendation as was its prerogative because the best interests of the children required the custody award that was made by the court. *See Div. of Child Support Enforcement v. Estrada,* 916 S.W.2d 443, 447 (Mo.App. W.D.1996).

**D. The trial court's custodial award of the three youngest children with Mother was supported by substantial evidence and was not against the weight of the evidence.**

Finally, Father argues that the trial court did not give sufficient weight to the environment that was provided by him for the minor children. Specifically, he claims that the trial court ignored the evidence that he has a home that reflects his level of income, makes substantial funds that provide a "good living," spends time with the children, and takes them to church to provide them moral structure and guidance. By contrast, Mother has used illegal drugs and has cohabitated with a convicted felon. Yet, the trial court placed the three youngest children with Mother.

Applying all relevant factors to this case, the trial court's award of joint legal and physical custody, with primary physical custody of Rachel, Mikey, and Bradley to Mother, was not against the weight of the evidence and was supported by substantial evidence. In this case, both parents sought custody of the children, and the evidence revealed that both parents have an ability and willingness to perform their functions as mother and father for the children's needs. The evidence also revealed that Mother and Father both live in Raymore, which will allow the children frequent, continuing, and meaningful contact with both parents. Additionally, the children are well adjusted to Mother's home, the marital residence, and Father's new home where they lived during the parties' separation, and they will attend the same schools while residing at either home. The evidence further revealed that throughout the marriage, Mother was primarily a homemaker and the children's caretaker, and Father often worked long hours building the marital estate. Mother will continue to be a full time homemaker and, therefore, the children will not need day care. Father, who continues to work long hours during certain times of the year, would require day care for the younger children if they resided with him. The evidence further showed that Mother will

be more likely to allow visitation than Father, who denied Mother any visitation for significant periods of time throughout the parties' separation. Finally, the trial court interviewed all of the children. Stacey told the trial court that she wished to live with Father, and Rachael indicated her desire to live with Mother. Mikey and Bradley, who were only 6 and 3 years old at the time of trial, did not indicate whom they preferred for their custodian. After careful review of the record and the transcript, this court is not left with a firm belief that the trial court's judgment is wrong. Thus, the judgment of the trial court is affirmed.

SPINDEN, C.J., P.J., and LOWENSTEIN, J., concur.